Owen L. REED, Jr., et al., Plaintiffs,

v.

SEARS, ROEBUCK & CO.,
et al., Defendants.

Civil No. AMD 95–1259.

United States District Court,
D. Maryland.

Aug. 16, 1996.

Stephen Burgess Awalt, Towson, MD, for plaintiffs.

Matthew T. Angotti, Baltimore, MD, Joel D. Newport, Semmes, Bowen & Semmes, Baltimore, MD, William B. Bergen, Jr., Timonium, MD, for defendants.

---

## MEMORANDUM

DAVIS, District Judge.

## I. INTRODUCTION

This products liability action arises out of an occurrence in which Kimberly Reed, eighteen months old, suffered serious injury when the glass of a full-view storm door shattered. Owen L. Reed, Jr. and Donna Reed ("the Reeds"), individually and as Kimberly's parents, seek damages based on theories of strict liability, breach of warranty and negligence against Sears, Roebuck & Company ("Sears"), the seller of the storm door; Chamberdoor Industries, Inc. ("Chamberdoor"), the door manufacturer; and Sterling Plumbing Group, Inc. ("Sterling"), which tempered the glass used in the storm door.

Sears has filed a *motion for summary judgment,* principally on the grounds of Maryland's "sealed container" law. Sterling has also filed a motion for summary judgment, which Sears has adopted, arguing that the plaintiffs lack the evidence necessary to support a rational finding in their favor as to several elements of each of their claims. The parties have fully briefed the issues presented in both motions, and they have been heard in argument at a hearing on the motions.

I conclude that Sears has made the requisite showing to invoke the statutory "sealed container" defense provided under Maryland law. Furthermore, although Sears' salesperson's actions and its written sales material arguably created express warranties in respect to the model of storm door at issue in this case, nevertheless, as a matter of law, plaintiffs' sole theory of liability excludes breach of any such express warranty as a proximate cause of Kimberly's injuries. Therefore, I shall grant Sears' motion for summary judgment. I shall deny Sterling's motion for summary judgment, however, because, giving plaintiffs the benefit of all reasonable inferences as required, genuine issues of material fact exist for determination by the jury.

## II. SUMMARY JUDGMENT STANDARDS

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying [with specificity] those portions of [the opposing party's case] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

 When considering the motion, the court will view all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514; *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Mere speculation by the non-moving party cannot stave off a properly supported motion for summary judgment. *See Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). In order to withstand the motion for summary judgment, the nonmoving party must produce sufficient evi-

dence which "demonstrate[s] that a triable issue of fact exists" for trial. *Shaw*, 13 F.3d at 798. *See also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; Fed.R.Civ.P. 56(e).

## III. FACTS

During the summer of 1991, the Reeds were interested in purchasing a storm door for the front entrance of their home, and they went to a Sears retail store in Salisbury, Maryland, in contemplation of making a purchase. As they examined various models on display, an unidentified salesman recommended a full-view storm door containing a large glass element. The Reeds indicated to the salesman that they had two young children at home, and that they were not interested in a full-view door because of a concern that the glass might break. The salesman assured the Reeds that children could not break the tempered glass in the door under examination and demonstrated the safety and strength of the glass by hitting it three to six times with a construction-type hammer, using "strong force." The salesman then remarked, "If I can't break it, what makes you think a small child can break it," or words to that effect.

Soon thereafter, in August 1991, the Reeds purchased the same model storm door recommended by the salesman, but through the Sears catalog rather than at the retail store. The Reeds contend that they relied on the salesman's representations and on the description of the storm door provided in the Sears catalog in making their purchase. It is uncontroverted that the door was properly installed (not by one of the defendants here) at the front entrance to the Reed's home.

After almost a year of ordinary use, on the evening of August 10, 1992, Kimberly was in the living room playing near the front of the house, out of view of her parents. The main door was open but the storm door at issue here was closed and locked. Kimberly's brother Owen was playing in the front yard, and he was able to observe Kimberly standing near the storm door with her hands on the glass. In a flash, immediately after Owen had turned his back to Kimberly, there was a crash of breaking glass. The Reeds immediately entered the living room to find Kimberly bleeding profusely and balancing at her midsection on the edge of a piece of broken glass that had remained in the frame of the storm door.

## IV. DISCUSSION

### A. Sears' Motion for Summary Judgment

Sears contends that it is entitled to summary judgment because it acted solely as the seller of the storm door, and, in that capacity, Md.Code Ann.Cts. & Jud.Proc. § 5–311 ("sealed container defense") immunizes it from liability as to all of plaintiffs' claims. The statute provides, in pertinent part:

*Elements of defense to action against product's seller.*—It shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that:

(1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;

(2) The seller had no knowledge of the defect;

(3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;

(4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and

(5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

Md.Code Ann.Cts. & Jud.Proc. § 5–311(b).

Sears contends that the sealed container defense was intended specifically to provide protection to retail sellers in situations similar to the one presented here. Sears argues that it does not manufacture any products, but only acts as a retail outlet for products manufactured by other companies. In the

ordinary course of business, Sears receives products from manufacturers at its catalog warehouse and it then ships the products, in their original sealed packaging, either to local Sears stores or to customers. Sears asserts that the manufacturer's packaging of products sold through its catalog is not disturbed or altered in any manner; the products contained therein are neither inspected nor modified. As a result, Sears maintains that it has no actual or constructive knowledge of any potentially defective products.

With respect to the storm door in the instant case, Sears points out that the Reeds purchased the door through the Sears catalog and that they opted to have the door delivered directly to their home. Sears did not manufacture, produce, design or designate the specifications of the storm door ordered by the Reeds. Instead, Sears simply acquired the storm door from the manufacturer, Chamberdoor, and then resold the door in its unaltered, sealed packaging to the Reeds. Furthermore, Sears was not involved in the installation of the storm door. Thus, Sears argues that it could not have discovered that the glass was improperly tempered.[1] Sears contends that based on the evidence in the record and on the only reported case discussing the sealed container defense, *Liesener v. Weslo, Inc.*, 775 F.Supp. 857 (D.Md.1991) (Smalkin, J.), all of the claims (asserted under theories of strict liability, warranty, and negligence) should be dismissed.

The plaintiffs do not dispute the factual basis for Sears' contentions, however, they dispute Sears' interpretation of the statute. They argue narrowly that the plain words of the statute limit the defense to products liability claims alleging "defective design or manufacture." In other words, according to plaintiffs, the statute does not provide a defense to claims for strict products liability based on "failure to warn," breach of warranty, or negligence.[2] I agree with Sears for the following reasons.

■ The Court of Appeals of Maryland recently re-stated the following well-settled principles of statutory construction:

> The goal of statutory construction is to determine and effectuate the Legislature's intention. Legislative intent is indicated primarily by the words of the provision. In examining the language, however, we cannot view individual provisions in isolation, but must look at the entire statutory scheme. Also, we must consider the objective and purpose of the statute. Moreover, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.

*Ward v. Department of Pub. Saf. & Cor. Servs.*, 339 Md. 343, 351–52, 663 A.2d 66, 70 (1995) (citations and quotation marks omitted). *See also Prince George's County v. Vieira*, 340 Md. 651, 658, 667 A.2d 898, 901 (1995) ("Where, giving the words of the statute their ordinary and common meaning, the statute is clear and unambiguous, it usually is unnecessary to go further.") (citations omitted).

■ In the present case, the terms of the statute are clear and unambiguous. The relevant provision states: "It shall be a defense to *an action* against a seller of a product for property damage or personal injury allegedly *caused by the defective design or manufacture of a product ....*" Md.Code Ann.Cts. & Jud.Proc. § 5–311(b) (emphasis added). Clearly, there are no restrictions or qualifying limitations placed on the nature of the *action* that may be dismissed once a seller has established the requisite elements of the defense. Furthermore, the language—*caused by the defective design or manufacture*—does not suggest that the sealed container defense is available only as to a narrowly-defined class of "defective design or manufacture" claims, to the exclusion of other claims ordinarily asserted as alternative theories of liability under the general rubric of "strict products liability." To the contrary, the focus of the defense is plainly

---

1. A mere visual inspection of the storm door glass would not have revealed that the glass was, as alleged by the plaintiffs, improperly tempered.

2. Of course, Sears is entitled to summary judgment as to any negligence claim, quite apart from the sealed container statute, since Sears was uninvolved in the design, manufacture or installation of the door.

upon *products which cause injury* because of some defect in their design or in the manner in which they were produced. Manifestly, plaintiffs' argument that the sealed container defense is limited to design and manufacturing defects, but is not applicable to claims alleging "failure to warn" or "inadequate warning," conveniently overlooks the fact that "failure to warn" liability is merely a type of design defect. *Canifax v. Hercules Powder Co.*, 237 Cal.App.2d 44, 53, 46 Cal. Rptr. 552 (1965); *Gosewisch v. American Honda Motor Co., Inc.*, 153 Ariz. 400, 403, 737 P.2d 376, 379 (1987); *Frankel v. Lull Engineering Co.*, 334 F.Supp. 913, 923–24 (E.D.Pa.1971), *aff'd*, 470 F.2d 995 (3rd Cir. 1973). *See also Ziegler v. Kawasaki Heavy Industries, Ltd.*, 74 Md.App. 613, 618, 539 A.2d 701, 703–04, *cert. denied*, 313 Md. 32, 542 A.2d 858 (1988).

■■■ Another well-settled maxim of statutory construction is particularly appropriate here: *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). The statute specifically provides limitations on the scope of its applicability.[3] Therefore, courts need not (and should not) infer additional exceptions to the statute. *See Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 575, 536 A.2d 1137, 1144 (1988) ("When the legislature has expressly enumerated certain exceptions to a principle, courts normally should be reluctant thereafter to create additional exceptions.").[4]

It was entirely beyond Sears' ability as a retail seller of the door to avoid the harm that befell Kimberly. The legislature must surely have had precisely this circumstance in mind when the statute was adopted. Since the statute is limited only by the enumerated exceptions, summary judgment in favor of Sears is mandated as to the plaintiffs' strict liability, implied warranty and negligence claims. I will now address the remaining "express warranty" claim.

■■■ The sealed container defense is not available if the retail seller made express warranties the breach of which proximately caused the alleged injuries.[5] *See supra* note 3. Here, the plaintiffs contend that a Sears salesperson made representations as to the ability of the glass to withstand the force generally applied by children. Moreover, the plaintiffs contend that statements contained in the Sears catalog constituted representations, amounting to a warranty, as to the quality of the storm door and the glass. Sears answers that the salesman's representations and the catalog descriptions did not constitute express warranties and that, in any event, all Sears warranties were limited warranties that expired thirty days after the date of purchase. Finally, Sears asserts that even if the written material or the salesman's words and acts created an express warranty, the Reeds have not produced admissible evidence that Sears' breach of that warranty was the proximate cause of Kimberly's injuries. I agree with this last contention for the following reasons.

---

**3.** Md.Code Ann.Cts. & Jud.Proc. § 5–311(c) provides:

> *Defense not available.*—The defense provided in subsection (b) of this section is not available if:
> (1) The manufacturer is not subject to service of process under the laws of this State or the Maryland Rules;
> (2) The Manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as they become due in the ordinary course of business;
> (3) The court determines by clear and convincing evidence that the claimant would be unable to enforce a judgment against the product manufacturer;
> (4) The claimant is unable to identify the manufacturer;
> (5) The manufacturer is otherwise immune from suit; or

> (6) The seller made any express warranties, the breach of which were the proximate and substantial cause of the claimant's injury.

**4.** The intent of the Maryland legislature here seems clearly to have been, as Judge Smalkin stated, "to make the chickens of a poor design come home to roost with the manufacturer, not the retailer." *Liesener*, 775 F.Supp. at 859. Limiting the applicability of the defense as suggested by plaintiffs would significantly (and illogically) undercut the fundamental purpose of the defense, which is to limit the liability of retailers and distributors who could not have reasonably discovered defects that originated with manufacturers.

**5.** This statutory exception mimics the elements of a breach of warranty cause of action wherein a

▋ There is a genuine dispute of material fact regarding whether Sears' representations, i.e., the declarations and demonstration by the salesman and the descriptions contained in the catalog, created any express warranties.[6] *See* Md.Code Ann.Com.Law, Official Comment 6. To be sure, it is difficult to give discernible content to the salesman's actions for purposes of a claim for personal injury; surely, his words and acts did not equate to a promise that the glass in such a door would *never* break, for Sears did not become an insurer by virtue of the salesman's bravado. Moreover, whatever its precise content, Sears' express warranty was not a warranty that the glass was properly tempered. In any event, I shall grant Sears' motion for summary judgment as to the express warranty claim on the basis that, even assuming Sears' representations created express warranties, as a matter of law, the injuries sustained by Kimberly were not proximately caused by a breach of the alleged warranties. *See Yonce v. Smithkline Beecham Clinical Labs., Inc.*, 111 Md.App. 124, 680 A.2d 569, 575–580 (1996) (analysis of proximate cause under Maryland tort law).

The plaintiffs' sole factual theory here is that Kimberly was injured because the glass of the storm door was defective, i.e., improperly tempered, and consequently, (1) it broke when it should not have broken, and (2) in shattering, it did not break in conformity with the applicable safety standards for properly tempered glass, that is, it broke into larger pieces than it would have if it had been properly tempered. That theory, however, necessarily precludes a finding that breach of the express warranties made by Sears, through its salesman and in its catalog, are the "but for" or "substantial" causes of Kimberly's injuries. *Cf. id.*

Breach of Sears' express warranties did not proximately cause Kimberly's injuries because, in the absence of the warranties, Kimberly nevertheless would have been injured by the improperly tempered glass contained in the door at issue. Moreover, it cannot be reasonably argued that breach of Sears' express warranties set the forces in motion resulting in Kimberly's injuries. As a matter of law, according to plaintiffs' theory, the actual "but for" cause of Kimberly's personal injuries was the defective tempering of the glass. *See Rock v. Oster Corp.*, 810 F.Supp. 665, 667 (D.Md.1991) (granting summary judgment for defendant on plaintiff's express warranty claim because the alleged warranty was "immaterial" to the injury suffered by plaintiff), *aff'd*, 983 F.2d 1057 (4th Cir.1993); *Lowe v. Sporicidin Internat'l*, 47 F.3d 124, 132 (4th Cir.1995).

▋ Thus, viewed in the light most favorable to the plaintiffs, breach of the express warranty did not proximately cause the injuries suffered by Kimberly. As a matter of law, any express warranties arising from the salesman's demonstration were, at most, limited to circumstances where pressure was applied to properly tempered glass. Similarly, the catalog made representations as to the quality of properly tempered glass, not untempered glass. If the plaintiffs had advanced the theory that properly tempered glass caused Kimberly's injuries, then (perhaps) a jury question would exist concerning whether breach of Sears' express warranties proximately caused Kimberly's injuries. But instead, plaintiffs' theory—and the only one supported by their expert—is that the glass was *not* properly tempered, and that it failed thereby to meet relevant safety standards. Therefore, Sears is entitled to summary

---

plaintiff must show that a warranty existed, that the product did not conform to the warranty, and that the breach proximately caused the injury or damage. *See Mattos, Inc. v. Hash*, 279 Md. 371, 379, 368 A.2d 993, 997 (1977).

**6.** Md.Code Ann.Com.Law § 2–313(1)(a) provides: "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Of course, there are no magic words that create a warranty, "but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.* at § 2–313(2).

judgment with respect to the express warranty claim.[7]

## B. Sterling's Motion for Summary Judgment

 Sterling tempered the glass used in the storm door. Sterling asserts that the plaintiffs lack the evidence necessary to make out essential elements of their claims for strict liability, negligence, and breach of warranty.[8] Specifically, Sterling argues that there is no witness to testify as to what actually happened during the brief period which intervened between the time Owen observed Kimberly standing near the front door with her hands on the glass, and the time of the incident. Since no one actually observed the glass break, Sterling maintains, the plaintiffs cannot overcome this asserted evidentiary gap by stacking "unreasonable" inferences one upon another.

 Relatedly, Sterling argues that the opinion of the plaintiffs' expert is "unreliable" because it is based on unsupported circumstantial evidence. Moreover, according to Sterling, the plaintiffs cannot prove that it was a *piece* of *untempered* glass (from among the many pieces into which the glass shattered) which actually caused Kimberly's injuries. I am constrained to the view, however, that Sterling has confused what may be in its estimation a weak jury case for one appropriate for summary judgment treatment.

Plaintiffs' ultimate burden in this case is clear. Plaintiffs need not "negative entirely the possibility that [Sterling's] conduct was not a cause, and it is enough that [they] introduce[ ] evidence from which reasonable [jurors] may conclude that it is more probable that the event was caused by [Sterling] than that it was not." *Otis Elevator v. Le-Pore,* 229 Md. 52, 58, 181 A.2d 659, 662 (1962). Based on this standard, it is clear there is sufficient evidence which, if believed, will support a rational inference by the trier of fact that the glass was improperly tempered, and that its defective condition proximately caused Kimberly's injuries.

The summary judgment record here makes clear that the plaintiffs are alleging that Kimberly made contact with the glass with some measure of force. The glass should not have shattered but it did, and, as a further result of its defective condition, it failed to break into small granular pieces posing a *de minimus* risk of harm. These allegations are supported by direct and circumstantial evidence, including the testimony of an expert witness, who will testify that, more likely than not: (1) Kimberly, a toddler weighing eighteen pounds at the time of the incident, was incapable of generating sufficient kinetic force to break a properly tempered glass; (2) to a reasonable degree of scientific certainty, the glass in the plaintiffs' storm door was not properly tempered (as evidenced by the fact that it shattered); and (3) when the glass shattered, it broke into fragments that failed to comply with governing safety standards. The expert's opinion is properly based on direct and circumstantial evidence. *See Meda v. Brown,* 318 Md. 418, 427–28, 569 A.2d 202, 206 (1990). Thus, I conclude that the plaintiffs have indeed adduced evidence sufficient to generate material factual disputes, and therefore to stave off Sterling's motion. Accordingly, I shall deny Sterling's motion for summary judgment.

---

7. At oral argument, plaintiffs insisted that the element of proximate cause was relevant only on the issue of "cause" for the "purchase" of the subject storm door. This conception confuses issues of "proximate cause" for the personal injury for which compensation is sought, on the one hand, and the "reliance" element necessary to the creation of an express warranty under § 2–313(1)(a), on the other hand. *See* note 5 *supra.* The latter is not a substitute for the former in a claim for breach of an express warranty alleged to have caused personal injury.

8. To recover on the theories of implied warranty and strict liability, the plaintiffs must show: "(1) the existence of a defect, (2) the attribution of the defect to the [manufacturer], and (3) a causal

## V. CONCLUSION

For the reasons set forth herein, Sears's motion for summary judgment shall be granted; Sterling's motion for summary judgment shall be denied. A separate order shall be issued herewith.

relationship between the defect and the injury." *Harrison v. Bill Cairns Pontiac*, 77 Md.App. 41, 50, 549 A.2d 385, 390 (1988) *(quoting Virgil v. "Kash N' Karry" Serv. Corp.*, 61 Md.App. 23, 30, 484 A.2d 652, 656 (1984), *cert. denied*, 302 Md. 681, 490

A.2d 719 (1985)). To establish a negligence claim, the plaintiffs must show duty, breach of duty, injury, and causation. *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994).