be made available through appropriate proceedings. An appropriate order follows.

Dated this 25th day of November, 1996.

ORDER OF THE COURT

**AND NOW,** this 25th day of November, 1996, having considered the submissions of the parties; and for the reasons set forth in the Court's accompanying Memorandum of even date; in the interests of justice,

**IT IS ORDERED,** that the Government's appeal is **DISMISSED** for lack of jurisdiction; and

**IT IS FURTHER ORDERED,** that the Territorial Court judgment dated October 25, 1994 is **AFFIRMED.**

Mildred RICHARDSON, et al.

v.

PHILLIP MORRIS INCORPORATED, et al.

Civil Action No. CCB–96–1963.

United States District Court, D. Maryland.

Jan. 7, 1997.

H. Russell Smouse, Peter G. Angelos, Towson, MD, for Plaintiffs.

James K. Archibald, Venable, Baetjer & Howard, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending is the plaintiffs' motion to remand this case to the Circuit Court for Baltimore City. This matter has been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the plaintiffs' motion to remand will be granted.

On May 24, 1996, the named plaintiffs, on behalf of themselves and others similarly situated, filed a complaint against the defendants—tobacco companies, distributors, and related parties—claiming a right to relief based on the defendants' alleged manipulation of nicotine levels in the tobacco products they sold with the intent to addict consumers, and their alleged concealment of the nicotine content, health risks, and addictiveness of the tobacco products. (Amended Compl. ¶ 1.) Each of the ten claims for relief is brought under Maryland statutory or common law. The claims include fraud and deceit, negligent misrepresentation, intentional infliction of emotional distress, conspiracy, negligence, breach of express and implied warranty, strict products liability, and violations of the Maryland Consumer Protection Act. The plaintiffs are seeking compensatory and punitive damages as well as class-wide equitable relief.

■ All of the plaintiffs are citizens of Maryland. Among the defendants are four Maryland distributors. Nonetheless, on June 24, 1996, the defendants filed a notice of removal in which they contended that this court has diversity jurisdiction under 28 U.S.C. § 1332. The plaintiffs filed a timely motion for remand, which the defendants have opposed on the basis that joinder of the Maryland distributors was fraudulent.[1]

■ The federal district courts have original jurisdiction over claims in which the amount in controversy exceeds $50,000 and the citizens of one state are proceeding against citizens of other states, domestic or foreign. 28 U.S.C. § 1332 (1994). Such claims may be removed from state court, but only if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (1994). While a motion to remand based on a defect in removal procedure must be made within 30 days, remand also is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (1994). In reviewing a motion to remand, because the federal courts are reluctant to interfere with matters properly before a state court,

---

1. The plaintiffs' argument that the defendants failed to meet the thirty-day deadline for filing the notice of removal is without merit. The notice of removal was filed with the consent of all non-Maryland defendants on June 24, 1996, within thirty days of service of the complaint. That the Maryland distributors' consent was not filed until June 25, 1996, is of no significance, because consent of fraudulently joined parties is not necessary for removal. *See Jernigan v. Ashland Oil,* 989 F.2d 812, 815 (5th Cir.), *cert. denied,* 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Brantley v. Vaughan,* 835 F.Supp. 258, 260 n. 2 (D.S.C.1993).

"[c]ourts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Creekmore v. Food Lion, Inc.,* 797 F.Supp. 505, 507 (E.D.Va.1992); *accord Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993).

■ As noted, the defendants removed this action from state court by alleging diversity of citizenship under 28 U.S.C. § 1332. They claim that the plaintiffs fraudulently joined the nondiverse defendants in an attempt to prevent removal of this action to federal court. To prove the Maryland distributors have been joined fraudulently, the defendants must demonstrate either that: (1) " '*no possibility* [exists] that the plaintiff[s] would be able to establish a cause of action against the in-state defendant[s] in state court' "; or that: (2) the plaintiffs have committed " 'outright fraud in [their] pleading of jurisdictional facts.' " *Marshall,* 6 F.3d at 232 (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981) (emphasis in original)); *accord Freeman v. Bragunier Masonry Contractors, Inc.,* 928 F.Supp. 611, 612 (D.Md.1996); *Birnbaum v. SL & B Optical Ctrs.,* 905 F.Supp. 267, 269 (D.Md.1995).

The defendants do not claim that the plaintiffs have committed "outright fraud" in their pleading of the jurisdictional facts. Instead, they argue that the plaintiffs have no possibility of a right to recover against the distributors. In attempting to demonstrate that no possibility of a right to relief exists, "[t]he burden on the defendant[s] ... is heavy; the defendant[s] must show that the plaintiff[s] cannot establish a claim against the nondiverse defendant[s] even after resolving all issues of fact and law in the plaintiff[s'] favor." *Marshall,* 6 F.3d at 232–33; *Butler v. R.J. Reynolds Tobacco Co.,* 815 F.Supp. 982, 984 (S.D.Miss.1993) ("When faced with a claim that a defendant has been fraudulently joined, this Court must resolve all disputed questions of fact and all ambiguities in controlling state law in favor of the nonremoving party...."). The plaintiffs' "claim[s] need not ultimately succeed to defeat removal; only a possibility of a right to relief need be

asserted." *Marshall,* 6 F.3d at 233; *accord Wright by Wright v. Lead Indus. Ass'n, Inc.,* 878 F.Supp. 47, 48 (D.Md.1995); *Pulse One Communications, Inc. v. Bell Atlantic Mobile Sys., Inc.,* 760 F.Supp. 82, 84 (D.Md. 1991) ("[T]he state law argument might be meritless as well as novel, but, ... the state courts should make that determination ... where the claim is not wholly nonsensical."). Moreover, the court may not consider the plaintiffs' motive for joining the nondiverse defendants as long as a possibility of a right to relief exists. *See Wright,* 878 F.Supp. at 48; *Brantley v. Vaughan,* 835 F.Supp. 258, 262 (D.S.C.1993).

■ In determining whether nondiverse defendants have been fraudulently joined, the court "is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.' " *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir.1990) (quoting *Dodd v. Fawcett Publications, Inc.* 329 F.2d 82, 85 (10th Cir.1964)). After considering the entire record in this case, I must conclude that the defendants have not met their difficult burden of demonstrating that the plaintiffs have no possibility of a right to relief against the Maryland distributors. As explained below, this conclusion rests primarily on an analysis of the strict liability claim asserted by the plaintiffs in count eight of the amended complaint.

In their strict liability claim, the plaintiffs allege that the tobacco products sold by the Maryland distributors were defective and unreasonably dangerous on two grounds. First, they allege that the manufacturers manipulated the levels of nicotine in the tobacco products, with the intent of addicting consumers to the product, and did in fact cause consumers to become addicted. (Amended Compl. ¶ 288.) Second, they allege that before 1969, the defendants failed to give any warnings to consumers of the addictiveness and health risks of the products, and after 1969, when the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.,* was amended, the defendants failed to give adequate warnings to the plaintiffs of the addictiveness and health risks of the prod-

ucts in a manner unrelated to the products' packaging. (Amended Compl. ¶ 289.) [2]

■ Under § 402A of the Restatement (Second) of Torts (1965), which has been applied by the Maryland courts, a distributor may be liable to the ultimate consumer if four elements are shown: "(1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition." *Phipps v. General Motors Corp.*, 278 Md. 337, 344, 363 A.2d 955, 958 (1976); *see also Owens–Illinois v. Zenobia*, 325 Md. 420, 441, 601 A.2d 633, 643 (1992). To support their contention that the plaintiffs have no possibility of recovery on a theory of strict liability, the defendants rely on two principal arguments: first, that the element of causation has not been satisfied as to the Maryland distributors; second, that the distributors are shielded from liability by the sealed container defense.

On the first issue, the plaintiffs have adequately alleged a causal connection in their amended complaint ("Defendants ... sold, offered for sale, supplied, or placed in the stream of commerce ... tobacco products which the Defendants knew to be defective, unreasonably dangerous and hazardous ... thereby ... causing injury to Plaintiffs and others similarly situated....") (Amended Compl. ¶ 39). The defendants contend, however, that given the market share of the local distributors, it is "unlikely" that a significant number of the plaintiffs purchased tobacco products distributed by the Maryland defendants. (*See* Defs.' Opp'n at p. 9 & n. 7.) As proof, the defendants offer affidavits indicating that A & A Candy Tobacco Company, Inc.'s ("A & A") sales are less than 0.5% of

the total tobacco product sales in Maryland, (Duering Aff. ¶ 2, Defs.' Ex. A); IK Candy Tobacco and Hosiery Company, Inc.'s ("IK") sales were less than 0.5% of total Maryland sales before IK sold its assets to A & A (Kaufman Aff. ¶ 2, Defs.' Ex. B); and George J. Falter Company's ("Falter") sales are less than 2%, of such sales, (Falter Aff. ¶ 3, Defs.' Ex. C). No mention is made of Crown Service, Inc.'s ("Crown") sales as a percentage of total sales in Maryland, but Crown only provides and supplies cigarette vending machines in the metropolitan Baltimore area. (Friedman Aff. ¶ 4, Defs.' Ex. D.)

■ While the court agrees it may be unlikely that the plaintiffs consumed tobacco products distributed by the Maryland defendants, that is not the test for fraudulent joinder. On this record the court cannot say there is no possibility the plaintiffs consumed the distributors' tobacco products. *Cf. Wright*, 878 F.Supp. at 48 (remanding state law claims of negligence and strict liability to state court where there was a "slight possibility" of recovery against a small hardware store which "might have" sold the lead paint that was applied to the plaintiffs' residence).

The defendants next argue that even if the plaintiffs have alleged sufficiently that the distributors are liable to members of the class under a strict products liability theory, the distributors are shielded from liability by the sealed container defense. *See* Md. Code Ann., Cts. & Jud.Proc. § 5–311 (1995). Under § 5–311(b),

[i]t shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that:

(1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;

---

2. The Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.*, was enacted in 1965. "[Section] 4 of the Act made it unlawful to sell or distribute any cigarettes in the United States unless the package bore a conspicuous label...." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 514, 112 S.Ct. 2608, 2616, 120 L.Ed.2d 407 (1992). In 1969, the Act was amended in part to strengthen the warning label and modify a preemption provision. *Id.* at 515, 112 S.Ct. at

2617. The Supreme Court has held that state law failure-to-warn claims concerning post–1969 advertising or promotions are preempted by the Act. *Id.* at 524, 112 S.Ct. at 2621. Thus, the plaintiffs may not recover against the distributors for any claims based on a failure to warn related to advertising or promotions after 1969. However, the distributors may be liable for any defective failure to warn before 1969.

(2) The seller had no knowledge of the defect;

(3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;

(4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and

(5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

*Id.* In satisfaction of the first, fourth, and fifth elements, the distributors have testified that they received the finished tobacco products in sealed containers from the manufacturers and resold them without alteration. (Duering Aff. ¶ 8, Defs.' Ex. A; Kaufman Aff. ¶ 8, Defs.' Ex. B; Falter Aff. ¶ 7, Defs.' Ex. C; Friedman Aff. ¶ 6, Defs.' Ex. D.) As to the second and third elements, the defendants deny that they knew of the defective and dangerous condition and deny that they could have discovered it in the exercise of reasonable care. (*See* Defs.' Opp'n at p. 11; Duering Aff. ¶¶ 10, 12, Defs.' Ex. A; Kaufman Aff. ¶¶ 10, 12, Defs.' Ex. B; Falter Aff. ¶¶ 9, 11, Defs.' Ex. C; Friedman Aff. ¶¶ 11, 13, Defs.' Ex. D.).

Application of the sealed container defense in a case involving tobacco products raises novel questions of state law. The sealed container statute is the subject of no reported Maryland opinions, although two judges of this court have applied it in granting summary judgment to retail sellers who had neither actual or constructive knowledge of the product's defect. *See Reed v. Sears, Roebuck & Co.*, 934 F.Supp. 713, 717 (D.Md.1996)

(finding the sealed container defense applicable to the sale of a storm door, in part because of Sears' assertion that it had no actual or constructive knowledge of any potential defect); *Liesener v. Weslo, Inc.*, 775 F.Supp. 857, 859 (D.Md.1991) (finding the sealed container defense applicable to the sale of a trampoline because the seller had not received actual or constructive notice of any defect in the warning labels).

The fact that Maryland's state courts have not yet issued any opinions exploring the limits of this defense in itself makes it difficult for this court to say there is no possibility of recovery against the distributors. Moreover, the federalism concerns raised by removal jurisdiction, *see Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994), are particularly strong when a federal court would have to predict how the state courts would rule on such policy-laden questions as whether the sealed container defense applies to tobacco products.[3]

■ Even if it is assumed that the sealed container defense could be asserted successfully by the Maryland distributors, however, the statute contains a reinstatement provision that would render this court's jurisdiction uncertain until the very conclusion of the case. The statute provides that summary judgment shall be entered in favor of a seller if the elements of the defense are satisfied. Md.Code Ann., Cts. & Jud.Proc. § 5–311(d)(1). The action against that defendant shall be reinstated, however, upon the occurrence of any one of six enumerated conditions, and shall not be "barred by the passage of time." *Id.* § 5–311(d)(3). The six conditions include inability to serve process on the manufacturer, inability to identify the manufacturer, insolvency of the manufacturer, and the plaintiff's inability to enforce a judgment against the manufacturer.[4] The

---

3. The plaintiffs argue it does not. (*See* Pls.' Mot. Remand at pp. 9–12; Pls.' Reply at pp. 5–10.)

4. In full, § 5–311(c) provides that the defense is not available if:

(1) The manufacturer is not subject to service of process under the laws of this State or the Maryland Rules;

(2) The manufacturer has been judicially declared insolvent in that the manufacturer is

unable to pay its debts as they become due in the ordinary course of business;

(3) The court determines by clear and convincing evidence that the claimant would be unable to enforce a judgment against the product manufacturer;

(4) The claimant is unable to identify the manufacturer;

defendants point out that none of these conditions currently apply, specifically representing that even the foreign defendant British–American Tobacco Company Limited will accept service of process in this case. (*See* Defs.' Opp'n at p. 15 & n. 8.) They cannot guarantee, however, that none of the specified conditions will be applicable in the future. Recent history unfortunately teaches that the result of nation-wide products liability cases may indeed be insolvency of one or more defendants. Given the scope of this potential class action, and the filing of similar suits in other states, it is not beyond all possibility that a successful Maryland plaintiff might find herself unable to enforce a judgment against one of the manufacturing defendants and thus entitled to reinstatement of her claim against a Maryland distributor.

Because the defendants have failed to demonstrate fraudulent joinder of the Maryland distributors, this court lacks subject-matter jurisdiction. The plaintiffs' motion to remand will be granted, so that the important issues of state law raised in this case may, appropriately, be decided by the state courts.

(5) The manufacturer is otherwise immune from suit; or
(6) The seller made any express warranties, the breach of which were the proximate and substantial cause of the claimant's injury.

Md.Code Ann., Cts. & Jud.Proc. § 5–311(c).