**Nona K. CHRISTENSEN**

v.

**PHILLIP MORRIS, INC., et al.**

**No. CIV. CCB–01–3117.**

United States District Court,
D. Maryland.

May 13, 2002.

Peter G. Angelos, Thomas P. Kelly, Law Offices of Peter G. Angelos, Baltimore, MD, for Plaintiff.

John Henry Lewin, Jr., James K. Archibald, Marina Lolley Sabett, Venable Baetjer and Howard LLP, Baltimore, MD, Virginia W. Powell, Hunton and Williams, Richmond, VA, Kathleen M. McDonald, Kerr McDonald LLP, Baltimore, MD, James E. Gray, Andrew Gendron, Venable Baetjer and Howard LLP, Deborah L. Robinson, Robinson Woolson PA, Baltimore, MD, Peter Allan Woolson, Robinson Woolson O'Connell, LLP, Baltimore, MD, for Defendants.

*MEMORANDUM*

BLAKE, District Judge.

Plaintiff Nona K. Christensen, individually and as the personal representative of the estate of her late husband Russell E. Christensen, filed suit in Baltimore City Circuit Court against Philip Morris and other cigarette manufacturers seeking damages for the death of Mr. Christensen in 2001 due to lung cancer. (Compl.¶¶ 10–28.) According to the complaint, Mr. Christensen began smoking in 1941 at the age of 14 and continued to smoke until 1976, following several failed attempts to quit in earlier years. Mrs. Christensen also named as defendants several distributors of tobacco products, including Giant Food, where her husband allegedly purchased many of the cigarettes that he consumed. (*Id.*) She relies on theories of strict liability (failure to warn); fraud by intentional misrepresentation and by concealment of material information; and conspiracy.

The plaintiff is a Maryland resident, as is Giant Food and the other distributors; the cigarette manufacturers are not. The defendants removed this case to federal court on the basis of diversity jurisdiction,

28 U.S.C. § 1332, claiming that the Maryland defendants were fraudulently joined. A hearing on the plaintiff's motion to remand was held January 16, 2002. For the reasons that follow, the motion will be granted.

Where no actual fraud is alleged, a removing party seeking to show fraudulent joinder must demonstrate "that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transportation*, 187 F.3d 422, 424 (4th Cir.1999) (*quoting Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (emphasis in original)). *See also Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md.1997). As the Fourth Circuit has explained:

> [t]he party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

*Hartley*, 187 F.3d at 424 (internal citation omitted).

Under Maryland law, a distributor of a defective product may be liable to the ultimate consumer if four elements are shown:

> 1) the product was in a defective condition at the time that it left the possession or control of the seller, 2) that it was unreasonably dangerous to the user or consumer, 3) that the defect was a cause of the injuries, and 4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Richardson*, 950 F.Supp. at 703, (*quoting Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955, 958 (1976)). The Maryland Court of Appeals has further explained that:

> [i]n a strict liability action, if a product is defective when it was sold by a manufacturer because it lacked a warning of its dangerous characteristics, although it should have had such a warning in light of the state of the art, and if the defective and dangerous product reaches the user plaintiff without substantial change, middlemen or intermediate sellers of the defective product are strictly liable to the plaintiff user just as the manufacturer is liable to the plaintiff. This principle, at least at the present state of the law's development, is fully applicable in a strict liability failure to warn case.

*Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633, 643 (1992) (internal citations omitted).

In Count I of the complaint (strict product liability/failure to warn), Mrs. Christensen alleges in part the following:

> [Maryland defendants], knowing Defendant manufacturers' cigarette products were in a defective condition at the time they were received from said Defendant manufacturers, knowing that the cigarettes were unreasonably dangerous to the ultimate users and consumers and that the products defect ... would cause injury to those who ultimately used and consumed the cigarette products, nonetheless, sold, promoted and distributed said cigarette products without substantial change in condition as they were received from Defendant manufacturers.

(Compl.¶ 224) Consistent with the above analysis of Maryland precedent, these allegations are sufficient to state a claim under Maryland law.

The defendants note, correctly, that the court "is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling and Testing Ctr's v. Group W. Television, Inc.*, 903 F.2d 1000,

1004 (4th Cir.1990) (*quoting Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964)); *Newman v. Motorola, Inc.*, 125 F.Supp.2d 717, 720 (D.Md.2000). That does not, however, license the court to engage in extensive fact finding or "delv[e] too far into the merits in deciding a jurisdictional question." *Hartley*, 187 F.3d at 425 ("The district court should not have made its own determination concerning the novel application of the public duty rule to Hartley's claims.") The appropriate inquiry may be one that goes to the status of the defendant, where that is essential to jurisdiction, rather than the merits of the claim itself. *See, e.g., Wells' Dairy, Inc. v. American Indus. Refrigeration, Inc.*, 157 F.Supp.2d 1018, 1037–40 (N.D.Iowa 2001); *Newman*, 125 F.Supp.2d at 721; *Edmond v. Food Lion, Inc.*, 895 F.Supp. 103, 105 (E.D.Va.1994).

The defendants submit numerous affidavits which may ultimately be sufficient to establish, for example, that a particular defendant never sold any of its tobacco products to Giant Food, and could not otherwise have been a link in the chain of distribution to Mr. Christensen. Even if it were appropriate to resolve that kind of factual issue when considering a claim of fraudulent joinder, *cf. Wright v. Lead Industries Ass'n, Inc.*, 878 F.Supp. 47, 48 (D.Md.1995), it would not be dispositive in this case, because a single Maryland defendant validly included in the complaint is sufficient to defeat diversity jurisdiction. There is no dispute that one of the Maryland defendants, Giant Food, sold tobacco products through its retail stores. Mr. Christensen is alleged to have purchased from the Giant at least some of the cigarettes that ultimately, according to the complaint, led to his death.

The defendants' principal argument to support the claim that they have been fraudulently joined is that they are protected from liability by the sealed container defense. See MD. CODE ANN., Cts. & Jud. Proc. § 5–405(b) (2001).[1] Under § 5–405(b):

> [i]t shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that:
>
> (1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;
>
> (2) The seller had no knowledge of the defect;
>
> (3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;
>
> (4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and
>
> (5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

By affidavit, and without serious dispute, the defendants satisfy the first, fourth, and fifth elements by showing that they received the finished cigarettes in sealed containers from the manufacturers and resold them without alteration. (*See, e.g.,* Def.'s Opp. Ex. F ¶¶ 4, 5, 7, 8.) As to the second and third elements, however, the defendants do not deny all knowledge, but rather contend that they had no more knowledge of nicotine addiction, health

---

1. Formerly codified at § 5–311.

risks, or other alleged defects of tobacco products "than did the general public." (*See, e.g.*, Def.'s Opp. at 8, Ex. F ¶¶ 10, 12, 15.)

Assuming this to be true, it is not at all clear that this would be sufficient to absolve the defendants of liability. The sealed container defense has not yet been applied in any published Maryland opinions cited to the court. The two opinions in this court applying the defense have involved different products (a storm door and a trampoline), and in those cases the court determined on a full summary judgment record that the retail sellers had no actual or constructive knowledge of any defect. *See Reed v. Sears, Roebuck & Co.*, 934 F.Supp. 713, 716–18 (D.Md.1996); *Liesener v. Weslo, Inc.*, 775 F.Supp. 857, 859–60 (D.Md.1991). As was true at the time of this court's opinion in *Richardson*, "[a]pplication of the sealed container defense in a case involving tobacco products raises novel questions of state law." 950 F.Supp. at 704. *Cf. Hartley*, 187 F.3d at 425 (noting that a novel issue of state law should not be relied on to establish fraudulent joinder).

The defendants rely, in part, on a tobacco products case from Alabama to support their application of the sealed container defense. *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213 (S.D.Ala.1998). In *Wakeland*, however, the court noted that "unlike many of her sister states, Alabama has kept her products-liability doctrine firmly rooted in the substantive soil of the tort of negligence," rejecting fundamental aspects of the Restatement's concept of strict liability. *Id.* at 1217. It was clear under Alabama law

that the distributor had to have knowledge or opportunity to inspect that was "superior to that of the consumer." *Id.* at 1219. There is no such clarity under Maryland law, where strict liability has been fully adopted, *Zenobia*, 601 A.2d at 643–44, and where the defendants presumably have the burden of proof in relying on the sealed container defense to show that they "could not have discovered the defect while exercising reasonable care." § 5–405(b)(3).

In any event, assuming the plaintiffs' burden here is to show that the defendants knew or had reason to know of the defective nature of the cigarettes, (*see* Mot. to Remand at 5, *citing Eagle–Picher v. Balbos*, 326 Md. 179, 604 A.2d 445, 452–57 (1992)),[2] and assuming that the defendants must be shown to have knowledge superior to that of the general public, it is not beyond the realm of possibility that the plaintiffs, with the benefit of full discovery, may be able to show such knowledge on the part of Giant Food or other tobacco distributors. Essentially the defendants seek to have this court make a summary judgment ruling properly left to the state court. *See Wright*, 878 F.Supp. at 48.

Accordingly, and without reaching the additional concern that suit against a defendant distributor may be reinstated if the manufacturer becomes insolvent, *see* MD. CODE ANN., Cts. & Jud. Proc. § 5–405(d)(3) (2001), this case will be remanded to the Circuit Court for Baltimore City.[3]

Given the unsettled state of Maryland law on some of the relevant issues, however, costs under 28 U.S.C. § 1447(c) will not be awarded. *See In re Lowe*, 102 F.3d 731, 733 n. 2 (4th Cir.1996); *Brown v. Wash-*

---

**2.** I note that the *Eagle–Picher* analysis was limited to negligence claims, unlike *Zenobia*, as the jury in *Eagle–Picher* found the deaths had not been caused by an unreasonably dangerous product. *See Eagle–Picher*, 604 A.2d at 448.

**3.** I have reviewed the cases cited in the parties' subsequent correspondence and do not find them contradictory to the basis for my decision to remand.

*ington/Baltimore Cellular, Inc.,* 109 F.Supp.2d 421, 424 n. 2 (D.Md.2000).

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby ordered that:

1. the plaintiff's Motion to Remand is **GRANTED**;

2. this case is **REMANDED** to the Circuit Court for Baltimore City; and

3. the clerk of the court shall mail copies of this Order to all counsel of record.