**DELMARVA SASH & DOOR CO. of MARYLAND, INC., et al.,**

v.

**ANDERSEN WINDOWS, INC., et al.**

No. CIV. CCB–02–1051.

United States District Court, D. Maryland.

Aug. 30, 2002.

Charles M. Tatelbaum, Cummings and Lockwood LLC, Hartford, CT, David A. Reif, Holley L. Claiborn, Cummings and Lockwood LLC, New Haven, CT, J. Donald Braden, Foster Braden Thompson and Palmer LLP, Stevensville, MD, David A. Shirlen, Womble Carlyle Sandridge and Rice PLLC, Winston Salem, NC, for Plaintiffs.

Jack L. Harvey, Victoria Herbert Wink, Wharton Levin Ehrmantraut Klein and Nash, Annapolis, MD, Mark N. Poovey, David A. Shirlen, Womble Carlyle Sandridge and Rice PLLC, Winston Salem, NC, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

This case arises out of the termination of a distributorship agreement (the "Agreement") between Delmarva Sash & Door Co. of Maryland, Inc. ("Delmarva") and Andersen Windows, Inc. ("AW"). AW manufactures millwork products, including windows and doors, and Delmarva, until the Agreement was terminated by AW in October 2001, was a distributor of AW's products in Maryland, Delaware, and Virginia. On January 10, 2002 AW filed suit against Delmarva in the United States District Court for the District of Minnesota, alleging violations of the Agreement.[1] On February 22, 2002 Delmarva and five stockholders not party to the Minnesota action separately filed suit against AW and Andersen Distribution, Inc. ("AD"), a wholly owned subsidiary of AW, in the Circuit Court for Kent County, Maryland. Defendants removed that action to this court on March 28, 2002 on the basis of diversity jurisdiction, 28 U.S.C. § 1332, claiming that plaintiffs had fraudulently joined non-diverse parties. Plaintiffs in the Maryland action have moved to remand the case to the state court. Meanwhile, applying the so-called Colorado River factors, on June 28, 2002 Judge Frank of the District of Minnesota stayed the Minnesota action pending the resolution of the Maryland action. *Andersen Windows, Inc. v. Delmarva Sash & Door Co. of Maryland,* No. Civ. 02–74 DWF/AJB, 2002 WL 1424570, *6 (D. Minn. June 28, 2002). Because the court finds that no parties were fraudulently joined, this case will be remanded to state court.[2]

### Background

According to the complaint, Delmarva has been an AW distributor since 1976. (Compl. at ¶ 14.) Delmarva initially operated as an AW distributor without a contract, but in 1995 was required to execute a written agreement (the "Agreement") drafted by AW, or face the termination of its relationship with AW. (*Id.* at ¶ 16.) The Agreement prohibited the sale of Andersen products outside of a designated territory. (*Id.* at ¶ 17.)

In late 1997, AW began to suggest that Delmarva would need to grow larger by combining with another distributor to better compete in a "consolidating" industry. (*Id.* at ¶¶ 20–22). According to the Agreement, Delmarva was required to obtain AW's assent before any merger or acquisition could be effected. (*Id.* at ¶ 23.) As a result of AW's suggestions, Delmarva hired an investment banker and circulated a confidential offering memorandum in early 1998. (*Id.* at ¶¶ 25–26.) In June 1998 Delmarva entered into a confidentiality agreement with Morgan Products Ltd. ("Morgan") so that it could evaluate Delmarva's internal records to determine whether to proceed with an acquisition. (*Id.* at ¶ 28.) In mid-June, Morgan signed a preliminary letter of intent to acquire Delmarva. (*Id.* at ¶ 29.) After reviewing Delmarva's records, Morgan decided not to proceed with the acquisition. (*Id.* at ¶ 31.) Delmarva alleges that the acquisi-

---

1. The distributor agreement in question allegedly contains a forum selection clause that designates the state and federal courts in Minnesota as the only proper forums for litigation.

2. Also pending is defendants' Motion to Dismiss or Transfer, which will not be considered because this court lacks subject matter jurisdiction.

tion was called off because AW was itself interested in acquiring Morgan, and because "[AW] had advised Morgan not to pursue the acquisition of [Delmarva]." (*Id.* at ¶ 33.) After the acquisition fell through, AW continued to advise Delmarva to find a "merger partner." (*Id.* at ¶ 34.)

In August 1998, Reeb Millwork Corporation ("Reeb"), another AW distributor, indicated that it was interested in acquiring Delmarva. (*Id.* at ¶ 35.) In October 1998 AW advised Reeb of its requirements for consenting to the transfer of ownership of Delmarva. (*Id.* at ¶ 40.) One of the requirements was that Delmarva and Reeb submit a joint business plan. (*Id.*) Delmarva alleges that during this same period, AW allowed Morgan to proceed with the acquisition of another distributor without requiring the submission of a business plan. (*Id.* at ¶¶ 44–46.) In December 1998 Reeb signed a letter agreement through which it agreed to purchase the outstanding stock of Delmarva as well as certain real estate and improvements owned by Landskroener, a Delmarva shareholder. (*Id.* at ¶ 49.) Also in December, Reeb and Delmarva formally requested AW's approval of the sale. (*Id.* at ¶¶ 50, 54.) A stock and real estate purchase agreement was executed between Delmarva and Reeb on December 29, 1998. (*Id.* at ¶ 55.) The purchase agreement included a contingency clause that required AW's consent prior to the sale. (*Id.*) Despite repeated attempts by Delmarva and Reeb to contact AW, AW personnel refused to respond to inquiries or to discuss the matter with Delmarva or Reeb until March 1, 1999, at which point AW

refused in writing to consent to the merger. (*Id.* at ¶¶ 60, 65.)

Meanwhile, between January and March, 1999, AW was negotiating to acquire Morgan, Delmarva's original suitor. (*Id.* at ¶ 61.) On March 10, 1999 AW issued a press release that it had signed an agreement to merge with Morgan. (*Id.* at ¶ 63.) Ultimately, Morgan was merged with AD, AW's wholly owned subsidiary. (*Id.* at ¶¶ 63,68.) After the announcement, Delmarva alleges that Morgan actively discouraged Delmarva's customers from dealing with it, instead directing them to purchase from Morgan and telling Delmarva's customers, in effect, that Delmarva would soon be out of business. (*Id.* at ¶ 64.) AW ultimately terminated Delmarva's distributor agreement on October 2, 2001. (*Id.* at ¶ 69.)

The complaint filed in the Circuit Court of Kent County on behalf of Delmarva and five individual Delmarva shareholders alleged six counts, including: violations of the "Maryland Antitrust Act"; unfair competition; violation of the Minnesota Franchise Act; tortious interference with business relationship; breach of contract and the implied covenant of good faith and fair dealing; and violation of the Maryland Fair Distributorship Act. AW is named as a defendant in all counts, and AD is named as defendant in counts I and II. In their notice of removal, defendants contend that complete diversity exists under 28 U.S.C. § 1332 because defendant AD and shareholder-plaintiff Marvin P. Cosden, both citizens of Delaware, were fraudulently joined.[3] Indeed if either AD or Cosden are fraudulently joined, complete diversity exists between the parties.[4]

---

**3.** There is no dispute that Cosden resides in Delaware, and that AD is incorporated in Delaware, rendering them both Delaware citizens. *See* 28 U.S.C. § 1332(c)(1).

**4.** Plaintiffs Delmarva and three of the five shareholders are Citizens of Maryland; one shareholder is a citizen of North Carolina, and Cosden resides in Delaware. Defendant AW is a citizen of Minnesota, and AD is a citizen of Delaware.

### Analysis

■ "Where no actual fraud is alleged, a removing party seeking to show fraudulent joinder must demonstrate that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Christensen v. Phillip Morris, Inc.,* 198 F.Supp.2d 713, 714 (D.Md.2002) (quoting *Hartley v. CSX Transportation,* 187 F.3d 422, 424 (4th Cir.1999)). According to the Fourth Circuit:

> [t]he party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

*Hartley,* 187 F.3d at 424 (internal citation omitted).

■ In determining whether fraudulent joinder exists, the court "is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling and Testing Ctr's v. Group W. Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir.1990) (quoting *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964)); *Newman v. Motorola, Inc.,* 125 F.Supp.2d 717, 720 (D.Md.2000). That does not, however, license the court to engage in extensive fact finding or "delv[e] too far into the merits in deciding a jurisdictional question." *Hartley,* 187 F.3d at 425 ("The district court should not have made its own determination concerning the novel application of the public duty rule to Hartley's claims.")

In their opposition to plaintiffs' motion to remand, defendants address counts I and II, arguing that the plaintiffs cannot establish a cause of action against AD for either violation of Maryland antitrust laws, or for unfair competition. Finding that the plaintiffs have some possibility of recovery against AD on the unfair competition count, the court need not address the antitrust claims.

■ Under Maryland law, the tort of common law unfair competition extends to "all cases of unfair competition in the field of business." *Electronics Store, Inc. v. Cellco Partnership,* 127 Md.App. 385, 732 A.2d 980, 991 (1999)(quoting *Baltimore Bedding Corp. v. Moses,* 182 Md. 229, 34 A.2d 338, 342 (1943)). "The rationale of the law is that 'no one, especially a trader, is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'" *Id.* The Court of Appeals has preserved a high degree of flexibility in the law of unfair competition:

> What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception.

*Baltimore Bedding,* 34 A.2d at 342. It is not limited to "passing off" one's own goods as those of a competitor. *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.,* 27 Md.App. 172, 340 A.2d 736, 747 (1975); *Edmondson Village Theatre, Inc. v. Einbinder,* 208 Md. 38, 116 A.2d 377, 379 (1955). Indeed, "[t]he legal principles which are controlling here are simply the principles of old-fashioned honesty. One man may not reap where another has sown, nor gather where another has strewn." *GAI Audio,* 340 A.2d at 748 (citation omitted).

■ Applying the above standards, the facts as alleged support a claim that Morgan misappropriated and improperly dis-

closed Delmarva's confidential information to AW prior to the merger, and also that AD later misused the information to improve its competitive advantage. See Aff. of Marvin Cosden at ¶¶ 7–10.

Whether AD would have successor liability for the tortious conduct of Morgan is not clear, but the court cannot say there is no possibility of such liability under Maryland or Delaware law. Nor is it impossible that AD would have direct liability for misuse of any confidential information after the merger. Therefore, without needing to decide the issues relating to Delmarva's antitrust claim, the court finds the defendants have failed to show that AD was fraudulently joined.

Next, defendants argue that the individual stockholder-plaintiffs have been fraudulently joined, because Delmarva is the only party that can properly bring a claim in this case. Because the shareholder plaintiffs have alleged a claim separate and distinct from the claims of Delmarva, however, the court finds that the shareholder-plaintiffs were not fraudulently joined.

Defendants argue that a suit to recover damages to a corporation can only be brought by the corporation itself through its directors, not by individual shareholders. See *Waller v. Waller*, 187 Md. 185, 49 A.2d 449, 452 (1946):

> The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation.

*Id.,see also O'Donnell v. Sardegna*, 336 Md. 18, 646 A.2d 398, 403 (1994); *Tafflin v. Levitt*, 92 Md.App. 375, 608 A.2d 817, 820

(Md.1992); *Danielewicz v. Arnold*, 137 Md.App. 601, 769 A.2d 274, 282–86 (2001).

If, however, a shareholder alleges an injury that is distinct from the corporation, the shareholder has standing to redress that injury. See *Strougo v. Bassini*, 282 F.3d 162, 171 (2d Cir.2002)(applying Maryland law); *Tafflin*, 608 A.2d at 820. "Where shareholders suffer an injury that does not stem from an injury to the corporation's business or property ... the corporation lacks standing to sue, and Maryland's 'distinct injury' rule allows shareholders access to the courts to seek compensation directly." *Strougo*, 282 F.3d at 171.

The shareholder-plaintiffs in this case have alleged a distinct injury, and therefore are proper parties to the case. The complaint asserts that, as a result of the unlawful acts of the defendants, the shareholders were, for all practical purposes, unable to sell their shares to willing buyers. Despite other injuries that may have accrued to the corporation, this one belongs to the shareholder-plaintiffs. *Cf. Strougo*, 282 F.3d at 174–75 (finding harms resulting from "coercive" nature of rights offering sufficiently stated a direct shareholders' claim). Accordingly, the court finds that none of the shareholder-plaintiffs, including Cosden, have been fraudulently joined.

Because plaintiff Cosden and defendant AD have been properly joined and are both citizens of Delaware, full diversity is lacking, and the case will be remanded to the Circuit Court for Kent County. Because defendants' arguments for removal were not unreasonable, however, no costs will be awarded under 28 U.S.C. § 1447(c). See *Parker v. Johnny Tart Enterprises, Inc.*, 104 F.Supp.2d 581, 585 (M.D.N.C. 1999).

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. the plaintiffs' motion to remand is **GRANTED**;
2. this case is **REMANDED** to the Circuit Court for Kent County; and
3. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.