**CERTAIN UNDERWRITERS AT LLOYD'S LONDON, et al., Plaintiffs,**

v.

**C.A. TURNER CONSTRUCTION COMPANY, INC., et al., Defendants.**

**Civil Action No. H–95–4353.**

United States District Court, S.D. Texas, Houston Division.

May 3, 1996.

---

## MEMORANDUM OPINION

HOYT, District Judge.

This is a state law action seeking a summary judgment in a declaratory judgment suit that the plaintiffs, Certain Underwriters at Lloyd's London, et al. ("Underwriters"), owe no insurance coverage obligations to the defendants, C.A. Turner Construction Company, Inc. ("C.A. Turner"), T.C.I., Inc. ("TCI"), and Huntsman Corporation, formerly known as Texaco Chemical Company ("Texaco").[1]

Before the Court is Underwriters' motion for summary judgment on their declaratory judgment suit. The Court, having considered the motion, the response, the reply, the pleadings on file, and the applicable law, holds that Underwriters' motion should be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action stems from a March 14, 1990, incident at Texaco's Port Neches chemical plant in which William Glenn Galbreath, a pipe-fitter employed by TCI, a subsidiary of C.A. Turner, allegedly suffered personal injuries during a fall. At the time, he was performing pipe-fitting activities in furtherance of a construction agreement between C.A. Turner and Texaco. Specifically, Galbreath was working inside a tent built on scaffolding that was designed to help him

---

1. Huntsman Corporation apparently purchased the properties involved in this suit from Texaco Chemical Corp., after the incident make the basis of this action occurred.

reach a certain section of pipe that was being installed. A cloud of Phenol gas developed inside the tent irritating his lungs and causing him to become disoriented. He fell off of the scaffolding and sustained additional injuries.

On January 15, 1992, Galbreath instituted a state court lawsuit for damages against C.A. Turner, TCI, and Texaco.[2] The co-defendants sought a legal defense to the plaintiff's claims and indemnity from C.A. Turner's insurance carrier, Underwriters. Shortly thereafter, the carrier caused its attorneys to issue a reservation of rights letter in which Underwriters denied both the duties to defend and to provide insurance coverage to the defendants. Apparently because of a continuing concern as to whether this denial of a defense and coverage was justified, Underwriters now seek to have this Court declare the parties' rights and duties under the insurance contract.

## CONTENTIONS OF THE PARTIES

Underwriters' motion for summary judgment seeks a declaration that its denial of a defense and coverage was proper because of a policy exclusion. The policy excludes coverage for claims arising out of bodily injuries caused by seepage, pollution, or contamination ("the absolute pollution exclusion"). This exclusion, Underwriters argue, extends to Galbreath's injuries because they are a result of seepage or pollution. Additionally, in the event this Court does enforce the exclusion, Underwriters next contend that the defendants failed properly to exercise a provision in the insurance contract that would have allowed them to "buy-back," or reinstate, the rights taken away by the exclusion.

On the other hand, the defendants contend that the absolute pollution exclusion does not apply in the facts of this case, i.e., in a situation in which a plant worker suffered personal injuries from noxious fumes. Rather, they assert, the exclusion merely prevents the carriers from having to provide a defense and coverage for a true environmental disaster, such as when a discharge of pollution from the plant premises endangers neighboring residents. The defendants also assert that, should the Court disagree with the defendants' position, their delay in complying with the terms of the "buy-back" clause should not prevent them from reinstating insurance coverage.

## DISCUSSION AND AUTHORITIES

### A. Subject Matter Jurisdiction

■ Under well-established precedent, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1996), is merely a procedural device for hearing declaratory judgments in federal court; the Act creates no independent basis for federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). In this case, such an independent basis is established by diversity jurisdiction, because the declaratory judgment sought arises under state law and concerns a controversy in excess of the sum of fifty thousand dollars ($50,000). 28 U.S.C. § 1332 (1996). Accordingly, this Court has subject matter jurisdiction.

### B. Burden of Proof Required in Order to Grant a Summary Judgment

Rule 56(c) provides that a summary judgment "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of informing the district court of the basis for the motion, and identifying those portions of the pleadings, discovery on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. A moving party also bears the burden of demonstrating that it is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); and, *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

2. No judgment has been rendered in this case, and the action still proceeds in state court.

After viewing the evidence in a light most favorable to the nonmovant, the Court should grant summary judgment if it concludes that a reasonable factfinder could not return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative in favor of the movant, summary judgment may not be granted. *See id.*

Moreover, once a party moving for summary judgment provides evidence to the Court demonstrating the absence of a genuine issue of material fact, the non-moving party must "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial. . . ." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Although the nonmovant is not required to provide absolute proof of the claims before the Court, something more than mere allegations and conclusions is required to defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); and, *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The Court now turns to the motion for summary judgment.

### C. Underwriters' Motion for Summary Judgment

Underwriters' action seeks a judgment that their decision not to provide a defense or coverage for the defendants in this case is appropriate. This Court agrees with Underwriters' position and grants their motion for summary judgment on the bases explained.

### 1. Choice of Law

■ In so doing, this Court first observes that Texas contract law provides the substantive rules for decision in this case. Because this Court sits in diversity, the *Erie* doctrine requires that the Court consult the law of the state in which the Court resides to determine which substantive rules to apply to an underlying dispute. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938). In Texas, the choice-of-law rules require a determination of which state has the "most significant relationship to the particular substantive issue[s] . . . ." in the

dispute. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). Without dispute, the accident occurred in Texas. Accordingly, Texas substantive contract law provides the rules of decision.

### 2. The Insurance Contract

Turning next to the Texas principles of contract law, this Court holds that, in Texas, an insurance policy is a contract governed by the same principles of contract law as is any other type of contract. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994); and, *Gomez v. Hartford Co. of the Midwest*, 803 S.W.2d 438, 441 (Tex.App.—El Paso 1991, writ denied). If an insurance policy is worded so that it may be given only one reasonable construction, it will be enforced as written. *See State Farm Fire & Casualty Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1993). Therefore, a court has a duty to enforce the contract according to its "plain meaning," unless ambiguities exist. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); and, *Gomez*, 803 S.W.2d at 441.

■ Texas courts recognize two types of ambiguities in contracts, "patent" and "latent." A "patent" ambiguity is evident on the face of the contract. *See National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). A "latent" ambiguity arises when a contract, which is unambiguous on its face, is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *See id.* We deal here only with a question of whether a latent ambiguity exists.

■ The defendants in this case claim that such a "latent" ambiguity arises when one considers the language of the absolute pollution exclusion clause in light of the circumstances surrounding the accident at the Texaco plant. The language of the exclusion reads as follows:

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS POLICY, IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS AND**

THAT THIS POLICY SHALL NOT APPLY TO:

\* \* \* \* \* \*

7. *SEEPAGE, POLLUTION AND CONTAMINATION:*

LIABILITY FOR ANY BODILY AND/OR PERSONAL INJURY TO OR ILLNESS OR DEATH OF ANY PERSON OR LOSS OF, DAMAGE TO, OR LOSS OF USE OF PROPERTY DIRECTLY OR INDIRECTLY CAUSED BY OR ARISING OUT OF SEEPAGE INTO OR ONTO AND/OR POLLUTION AND/OR CONTAMINATION OF AIR, LAND, WATER AND/OR ANY OTHER PROPERTY AND/OR ANY PERSON IRRESPECTIVE OF THE CAUSE OF THE SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION, AND WHENEVER OCCURRING.

\* \* \* \* \* \*

*See* Insurance Contract, attached as Exhibit "A" to Plaintiffs' Motion for Summary Judgment, at pages 28–30.

An ambiguity, the defendants assert, arises when the clause is analyzed in the context of a chemical plant such as the one owned and operated by Texaco. In the defendants' view, *every* accident occurring at such a plant could be construed as "... directly or indirectly caused by or arising out of seepage ... pollution ... and/or ... contamination...." The intent behind the exclusion, they argue, is to protect the carriers from having to provide a defense and coverage for serious environmental disasters affecting surrounding residents and the local community.

This Court disagrees. No precedent exists in Texas for construing this clause either as patently or latently ambiguous. The sole precedent cited by the defendants for doing so is an opinion from the United States Court

of Appeals for the Sixth Circuit.[3] By contrast, the most relevant *Texas* authority favors the interpretation advanced by Underwriters. In *National Union Fire Ins. v. CBI Indus., Inc.,* 907 S.W.2d 517 (Tex.1995), the Texas Supreme Court reversed a lower court ruling which opined that the clause was latently ambiguous and remanded the case for further factfinding. In so doing, the court decided that two similarly worded insurance policies were not ambiguous, and thereby upheld the validity of those policies' absolute pollution exclusion clauses. *Id.* at 521–22.[4]

Furthermore, the United States Court of Appeals for the Fifth Circuit cited the *CBI* opinion as direct authority in ruling that another absolute pollution exclusion clause was unambiguous. *See Constitution State Ins. Co. v. Iso–Tex, Inc.,* 61 F.3d 405, 409 (5th Cir.1995). Perhaps most significantly, though, this very Court has previously ruled in favor of enforcing yet another pollution exclusion clause in the very manner advocated by Underwriters. *See Dorsett Brothers Concrete Supply, Inc. v. Northbrook Property and Casualty Ins. Co.,* No. H–92–2546, 1995 WL 559379, at \*4 (S.D.Tex. Sept. 10, 1993) (unpublished opinion). Accordingly, this Court stands by its earlier ruling as well as the clear precedents from the relevant higher courts that absolute pollution exclusion clauses are unambiguous.

As noted earlier, once a court determines that a contract term is not ambiguous, it must then determine that contract's "plain meaning." *Puckett,* 678 S.W.2d at 938. A reading of this insurance contract clearly reveals that the policy excludes coverage for bodily injuries "... directly or indirectly caused by or arising out of seepage ... pollution ... and/or ... contamination...." These words leave no doubt that if the accident victim's injuries arose from pollution,

---

**3.** *Lumbermens Mutual Casualty Co. v. S–W Indus., Inc.,* 23 F.3d 970 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994), *amended and superseded by,* 39 F.3d 1324 (6th Cir.1994).

**4.** The defendants advance the novel theory that because the *CBI* Court did not expressly reject the Sixth Circuit's superseded decision in *Lum-*

*bermens Mutual Casualty Co. v. S–W Indus., Inc.,* 23 F.3d 970 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994), *amended and superseded by,* 39 F.3d 1324 (6th Cir.1994), the Texas Supreme Court in effect was giving the Sixth Circuit opinion some precedential value in Texas. This Court does not agree.

those injuries are not subject to coverage under the terms of the policy.

In summary, because the alleged injuries stem from noxious and toxic fumes that were released through pipe at Texaco's plant, this Court rules under current law that both a defense and indemnity coverage were properly denied. Because the exclusions were proper, Underwriters' subsequent denials of a defense and coverage were also proper.

### 3. The "Buy–Back" Clause

■ Turning now to the "buy-back" clause issue, this Court notes that the insurance contract provides a specific procedure for reinstating policy benefits that have been previously taken away by the absolute pollution exclusion. This clause reads as follows:

*SEEPAGE AND POLLUTION BUY–BACK (168 HOUR CLAUSE)*

> NOTWITHSTANDING THE ABSOLUTE SEEPAGE AND POLLUTION EXCLUSION CONTAINED IN THIS POLICY, THESE SHALL NOT APPLY PROVIDED THAT THE ASSURED ESTABLISHES THAT OF ALL [sic] THE FOLLOWING CONDITIONS HAVE BEEN MET.
>
> A. THE OCCURRENCE WAS SUDDEN AND ACCIDENTAL AND WAS NEITHER EXPECTED NOR INTENDED BY THE ASSURED. AN ACCIDENT SHALL NOT BE CONSIDERED UNINTENDED OR UNEXPECTED UNLESS CAUSED BY SOME INTERVENING EVENT NEITHER EXPECTED NOR INTENDED BY THE ASSURED.
>
> B. THE OCCURRENCE CAN BE IDENTIFIED AS COMMENCING AT A SPECIFIC TIME AND DATE DURING THE TERM OF THIS POLICY.
>
> C. THE OCCURRENCE BECAME KNOWN TO THE ASSURED WITHIN 168 HOURS AFTER ITS COMMENCEMENT AND WAS REPORTED TO UNDERWRITERS WITHIN 90 DAYS THEREAFTER.
>
> D. THE OCCURRENCE DID NOT RESULT FROM THE ASSURED'S INTENTIONAL AND WILLFUL VIOLATION OF ANY GOVERNMENT STATUTE, RULE OR REGULATION.

*See* Insurance Contract, attached as Exhibit "A" to Plaintiffs' Motion for Summary Judgment, at page 36.

Significantly, Underwriters allege in their motion for summary judgment that the defendants did not comply with the terms of this "buy-back" provision, and that the defendants have failed to provide the Court with any evidence or argument suggesting otherwise.

The defendants do contend, though, that this clause should not be enforced against them because it is ambiguous and because its enforcement would improperly change an "occurrence" insurance policy into a "claims-made" policy. This Court finds both of the defendants' arguments to be specious and holds that the clause does not automatically work to reinstate the coverage taken away by the absolute pollution exclusion clause.

Looking first at the defendants' claim of ambiguity, this Court notes that the same rules of contract law previously discussed in the context of the absolute pollution exclusion govern the effect to be given to this clause. Although there is no precedent establishing that such "buy-back" clauses are unambiguous, this Court finds nothing in the clause confusing or subject to more than one meaning. As a result, this Court must apply the "plain meaning" rule to interpret the clause. In so doing, this Court holds that the words in the clause, while somewhat less than perfectly drafted, nonetheless, leave no doubt that four specific events must occur in order for reinstatement to be appropriate. The defendants have failed to establish these four events.

■ Likewise, the defendants' second argument that to enforce the "buy-back" clause as written would improperly turn this insurance policy from an "occurrence" policy into a "claims-made" policy. The differences between the two types of insurance policies are particularly poignant to this contention. An "occurrence" policy is one in which insurance coverage attaches " 'once the occurrence

takes place'." *Hirsch v. Texas Lawyers' Ins. Exchange,* 808 S.W.2d 561, 563 (Tex.App.—El Paso 1991, writ denied) (citing to *St. Paul Ins. Co. v. House,* 73 Md.App. 118, 533 A.2d 301, 303 (1987)). By contrast, "[c]laims-made policies ... require that notification to the insurer be [made] within a reasonable time...." *Id.* at 563. Thus, under an "occurrence" policy, insurance coverage, if not excluded, is effective immediately once the covered peril is reported to the carrier. By contrast, under a "claims-made" policy, a *condition precedent* to coverage is the actual reporting of the event to the carrier within a reasonable period of time.

Without passing on whether this "buy-back" clause changes the policy from an "occurrence" to a "claims-made" policy, this Court simply concludes that the language of the "buy-back" clause is unambiguous and must be enforced according to its "plain meaning." *See Puckett,* 678 S.W.2d at 938.

The Court finds that the four events constitute conditions precedent to the reinstating of insurance coverage where that coverage has been previously taken away by the absolute pollution exclusion clause. The Court notes that the defendants are all large, sophisticated corporations which have access (or should have access) to competent legal counsel to advise them on the clear effect of this "buy-back" clause. More importantly, the Court observes that this clause is not itself an exclusion (which might have mandated a greater degree of notification to the defendants), but rather serves merely to reinstate coverage that has been found to be excluded.

## CONCLUSION

Because this Court determines that there is no genuine issue as to any material fact, and that Underwriters are entitled to judgment as a matter of law, this Court grants Underwriters' motion for summary judgment.

It is so ORDERED.