OPINION OF THE COURT
Karla Moskowitz, J.
I. BACKGROUND
This action involves a death from Acquired Immune Deficiency Syndrome (AIDS), allegedly caused by a transfusion of blood contaminated with the human immunodeficiency virus (HIV). The transfusion took place during triple coronary artery bypass surgery at University Hospital of New York University *718 Medical Center (University Hospital) in February 1983. In addition to suing University Hospital, University Hospital Blood Bank (Blood Bank) and decedent’s physician, plaintiff has also sued the blood-banking industry’s national trade association, the American Association of Blood Banks (AABB), which now moves to dismiss the complaint pursuant to CPLR 3013 and 3211 (a) (7).
The complaint contains four causes of action. In the first count, plaintiff claims essentially that AABB negligently established deficient blood collecting standards that were not in keeping with the state of scientific knowledge, that the alleged transmission of HIV to the decedent resulted from the collection of blood in accordance with such negligently established standards and that plaintiff was damaged as a result. The second cause of action seeks further damages as a result of the same conduct for financial and economic benefits that would have accrued to plaintiff’s estate had decedent lived. In the third and fourth causes of action, plaintiff claims that defendants failed to advise decedent and his family of the option of donating his own blood or obtaining family blood donations and failed to warn decedent of the risk of HIV transmission from blood and plasma transfusions.
AABB’s motion to dismiss is directed at both the adequacy of plaintiff’s pleadings and the legal duties and responsibilities, if any, of AABB to the recipient of a blood transfusion.* As to the adequacy of the pleadings, the court finds they are sufficient to give defendant AABB notice of plaintiff’s claims. As to AABB’s duty in setting standards for blood collection, the court relies in part on the reasoning of the Supreme Court of New Jersey in Snyder v American Assn. of Blood Banks (144 NJ 269, 676 A2d 1036), decided under New Jersey law after a jury verdict, and concludes that, under New York law, a trade association setting standards and guidelines for the collection of blood owes a duty to the ultimate recipient of that blood. As to the other causes of action asserted against AABB, the court concludes that AABB had no duty to advise decedent and his family of his medical options or to warn decedent of the risks of transmission.
Accordingly, for the reasons set forth below, defendant AABB’s motion to dismiss plaintiff’s first and second causes of action is denied. Its motion to dismiss the third and fourth causes of action is granted.
*719 II. DISCUSSION
A. First Cause of Action: Negligence in Setting Standards
1. Failure to Allege a Cause of Action
Plaintiff alleges that defendant AABB negligently established blood collection standards that were deficient and not in keeping with the state of scientific knowledge at the time the blood for decedent’s transfusion was collected. Plaintiff alleges further that either University Hospital or Blood Bank collected the blood received by decedent Weigand in accordance with those deficient standards and that the blood contained HIV and other viruses that ultimately caused decedent’s death.
As a partial basis for its motion to dismiss this cause of action, AABB asserts that, in counts one and two, the complaint fails to plead essential elements of a negligence cause of action, i.e., that AABB owed a duty to decedent, that AABB’s standards proximately caused the transmission of a virus to decedent and that defendant AABB had and negligently exercised control over the other defendants, thereby causing decedent’s injuries.
CPLR 3211 (a) (7) provides: "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that * * * the pleading fails to state a cause of action”. The sufficiency of a pleading generally depends on whether there is substantial compliance with CPLR 3013 (Foley v D’Agostino, 21 AD2d 60, 62-63), which provides: "[statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.”
The "essential facts required to give 'notice’ must be stated” (Foley v D’Agostino, supra, at 63). " 'Pleadings should not be dismissed or ordered amended unless the allegations therein are not sufficiently particular to apprise the court and parties of the subject matter of the controversy’ ” (supra, at 63, quoting 3 Weinstein-Korn-Miller, NY Civ Prac ¶3013.03). The court’s inquiry is limited to determining whether the complaint states any cause of action, not whether there is evidentiary support for it (Rovello v Orofino Realty Co., 40 NY2d 633, 635-636).
A pleading is deemed to " 'allege "whatever can be implied from its statements by fair and reasonable intendment” * * * The question * * * is whether [there] "can be fairly gathered *720 from all the averments” * * * the requisite allegations of any valid cause of action cognizable by the state courts’ ” (Dulberg v Mock, 1 NY2d 54, 56, quoting Condon v Associated Hosp. Serv., 287 NY 411, 414).
In the complaint, plaintiff alleges, as part of the first cause of action, that the standards for the collection and screening of blood were "negligently established by defendant AABB,” that Blood Bank, in collecting and screening blood, adhered to those standards and that adherence to those standards resulted in the transmission of HIV and other viruses to plaintiff’s decedent, causing his death from AIDS (complaint 15-20, 22; emphasis added). Implied in an allegation of negligence is an allegation of the elements of that cause of action (a duty owed by defendant to plaintiff, a breach of that duty and an injury proximately caused by that breach of duty).
The court finds that the complaint, as drafted, sets forth the transactions and occurrences on which plaintiff bases her negligence claim sufficiently to give defendant AABB notice of that claim and to enable AABB to defend against it. Accordingly, defendant’s motion to dismiss based on plaintiff’s failure to plead a cause of action in negligence is denied.
2. Existence of a Duty
As an additional basis for its motion to dismiss, defendant AABB asserts that, even if the elements of a negligence claim regarding promulgation of its standards have been pleaded, the complaint fails to state a cause of action against AABB, because AABB owed no duty to plaintiff or her decedent, it had no relationship with plaintiff or decedent and it neither had nor exercised control over University Hospital, Blood Bank or the defendant doctor.
When plaintiff’s allegations, if taken as true, do allege a cause of action, dismissal with prejudice under CPLR 3211 (a) (7) is proper only when it is clear that a material element does not exist (see, Renel Constr. v Brooklyn Coop. Meat Distrib. Ctr., 59 AD2d 391, 396, affd 46 NY2d 859). Here, defendant AABB asserts that the element of duty on the part of AABB does not exist. The court disagrees.
The existence of a "duty owed by one member of society to another is a legal issue for the courts” (Eiseman v State of New York, 70 NY2d 175, 187). "[A]bsent legislative intervention, the fixing of the 'orbit’ of duty * * * is the responsibility of the courts” (De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055). The Court in De Angelis stated further that: "Duty is es *721 sentially a legal term by- which we express our conclusion that there can be liability (see, generally, Green, The Duty Problem in Negligence Cases, 28 Col L Rev 1014). It tells us whether the risk to which one person exposes another is within the protection of the law. In fixing the bounds of that duty, not only logic and science, but policy play an important role (Becker v Schwartz, 46 NY2d 401, 408; Ventricelli v Kinney System Rent A Car, 45 NY2d 950; Pagan v Goldberger, 51 AD2d 508, 510; Ortiz v Kinoshita & Co., 30 AD2d 334, 336-337; Prosser, Torts [4th ed], § 42, pp 244-249).” (Supra, at 1055.) " 'While moral and logical judgments are significant components of the analysis, [the court is] also bound to consider the larger social consequences of [its] decisions and to tailor [its] notion of duty so that "the legal consequences of wrongs [are limited] to a controllable degree” ” (Eiseman v State of New York, supra, at 187, quoting Waters v New York City Hous. Auth., 69 NY2d 225, 229).
The decisions relied on by defendant AABB (Beasock v Dioguardi Enters., 130 Misc 2d 25; Howard v Poseidon Pools, 133 Misc 2d 50; Meyers v Donnatacci, 220 NJ Super 73, 531 A2d 398) are inapposite. In Beasock (supra) the court held that a manufacturers’ trade association was not liable in negligence for injuries caused by a tire and rim that was manufactured by a member company. The court, in determining that the association was not liable, noted that the association had "not undertaken to develop or promulgate safety measures” and had not created or established specifications (Beasock v Dioguardi Enters., supra, at 30). Rather, its role was limited to publishing dimensional specifications after they had been accepted by the industry at large (supra, at 31). Here, defendant AABB does not deny that it established standards for the collection of blood.
In Howard (supra) and Meyers (supra), plaintiffs sought to hold manufacturers’ trade associations responsible for association members’ alleged negligent manufacture of swimming pools. In Howard, the court granted the association’s motion for summary judgment, finding it unreasonable to hold the association responsible for the negligence of the manufacturer, where the association did not control the pool manufacturer’s actions (Howard v Poseidon Pools, supra, at 55-56). Likewise, in Meyers, the New Jersey court, citing both Beasock (supra) and Howard, declined to hold the association liable, finding that, irrespective of the measures taken, it was unlikely that the trade association could prevent the negligent conduct of the pool *722 manufacturer (Meyers v Donnatacci, supra, 220 NJ Super, at 81-82, 531 A2d, at 402-403). Neither Howard nor Meyers is relevant here because plaintiffs seek not to hold defendant AABB liable for the negligence of a member blood bank, but for its own negligence in establishing the standards allegedly followed by a member blood bank. The New Jersey appellate court in Snyder v American Assn. of Blood Banks (282 NJ Super 23, 659 A2d 482, affd 144 NJ 269, 676 A2d 1036, supra) also found Meyers to be inapposite as to the duty of a blood-banking association (supra, 282 NJ Super, at 43, 659 A2d, at 492).
In New York, no court has previously addressed the duty, if any, owed by a trade association of blood banks to a patient injured from tainted blood collected by a member blood bank according to trade association standards. As noted, New Jersey’s highest court recently addressed this issue in Snyder v American Assn. of Blood Banks (144 NJ 269, 676 A2d 1036, supra). The court examined the issue of AABB’s duty to Snyder, an August 1984 recipient of HIV-infected blood collected according to AABB’s standards by an AABB member and provided to a hospital, where it was transfused to Snyder during open-heart surgery. In determining that a duty existed on the part of the same blood-banking association to the ultimate recipient of blood collected according to AABB standards, the court examined a number of factors that are also relevant in determining whether, under New York law, AABB owed a duty to plaintiffs’ decedent. The New Jersey court opined that the existence of such a duty is a question of fairness and policy (supra, 144 NJ, at 292, 676 A2d, at 1048). It examined the nature of the risk posed, the relationship of the parties and the impact on the public of an imposition of a duty of care (supra). Based on those considerations, the Supreme Court of New Jersey determined that "AABB owes a duty of ordinary care to persons receiving blood or blood products from its members” (supra, 144 NJ, at 305, 676 A2d, at 1054). This court finds that those same considerations are relevant to a determination under New York law of the existence of a duty of care on the part of AABB.
As to the relationship of the parties, AABB admittedly had no direct relationship with either the blood donor or the decedent and did not directly obtain, process or transfuse into decedent the infected blood that allegedly caused him to contract HIV and, subsequently, AIDS. Blood banks owe a duty of reasonable care in the practice of their profession, and proof *723 of a blood bank’s compliance with the industry standards of collection and testing generally constitutes proof of reasonable care on the part of the blood bank (Gilmore v Memorial Sloan Kettering Cancer Ctr., 159 Misc 2d 953, 956; Hoemke v New York Blood Ctr., 912 F2d 550, 552; see also, Mondello v New York Blood Ctr., 80 NY2d 219, 227). Thus, it is clear that the care used in establishing those industry standards has tremendous impact on the manner in which blood is collected and tested. It is equally clear that the relationship between a standard-setting industry association and the ultimate recipient of a transfusion, although not a direct relationship, is one in which the conduct of the industry association may have a direct effect on the recipient, e.g., if the industry association negligently sets inadequate standards for blood collection and screening and those standards are followed by a member blood bank, resulting in the collection and transfusion of tainted blood, it is the recipient of the blood transfusion who will be damaged, not the blood bank.
As to the risk posed, it has been scientifically established that, as plaintiff alleges was the case here, HIV can be transmitted when blood from an HIV carrier is introduced into the bloodstream of another individual (Brown v New York City Health & Hosps. Corp., 225 AD2d 36, 44, citing US Dept of Health and Human Servs, Surgeon General’s Report on Acquired Immune Deficiency Syndrome 16 [1987]). The virus gradually weakens the human immune system and, if full-blown AIDS develops, there is a breakdown of the body’s immune system, leading eventually to death (225 AD2d, at 43). Thus, the risk posed by a failure to exercise due care in promulgating standards for blood collection is a very serious one.
Another factor to be considered in placing a duty on a blood-banking industry trade association is the impact on the public of imposition of that duty. It is "the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree’ ” (Strauss v Belle Realty Co., 65 NY2d 399, 402, citing Tobin v Grossman, 24 NY2d 609, 619) and "to protect against crushing exposure to liability” (Strauss v Belle Realty Co., supra, at 402). Where duty has been enlarged, central to that decision has been the ability to extend duty to cover specifically foreseeable parties but at the same time to contain liability to manageable levels (supra, at 404, citing, e.g., Glanzer v Shepard, 233 NY 236; White v Guarante, 43 NY2d 356).
*724 Here, the parties who would be covered by a duty on the part of the industry trade association were specifically foreseeable, i.e., the recipients of blood collected and screened according to the trade association standards by member blood banks complying with those standards. Imposition on the trade association of a duty of care to those blood recipients would not expose the trade association to liability to the public at large and its liability would be within manageable limits. Thus, this court concludes that the risk to which recipients of blood transfusions are exposed by a blood-banking industry trade association’s establishment of standards for blood collection and screening by its members is entitled to protection under the law of New York.
Based on considerations of fairness and policy and the parameters set forth by the New York courts, as well as this court’s analysis of the factors relied on by the Supreme Court of New Jersey in Snyder v American Assn. of Blood Banks (supra), this court holds that, in establishing standards, AABB has a duty of ordinary care to those receiving blood or blood products from its member blood banks.
Plaintiff asserts that the standards established by defendant AABB were deficient and not in keeping with the scientific knowledge of the time, that evidence will be adduced at trial that the Center for Disease Control advised the industry of the proper procedures for screening and testing donors and that the industry rejected those recommendations. In Doe v University Hosp. (148 Misc 2d 756), a case involving a January 1984 AIDS transfusion, the defendant hospital claimed that, because the test for the AIDS virus was not available until 1985, it should, as a matter of law, have no liability for a pre1985 transfusion of contaminated blood. The court rejected this argument, stating:
"While it is true that a test capable of screening blood for the AIDS virus was not available until early 1985, it had been established by 1982 that there was a risk of transmission by blood transfusions; by 1983 many in the blood bank industry were using safeguards such as surrogate testing (whereby donors were screened for blood abnormalities associated with AIDS) and in-depth interviews aimed at identifying donors who might be in a high risk group (see, US Dept of Health and Human Servs, Report of Second AIDS Prevention and Control Conf [Nov. 1988]; AIDS Figures Mount as Researchers Seek Answers to the Puzzle, Sept. 1983 Am Fam Physician) * * *
"Clearly, the fact that a screening test for AIDS was not available until 1985 does not foreclose this plaintiffs claims of *725 negligence in the 1984 transfusion at issue.” (148 Misc 2d, at 757-758.)
As Doe (supra) makes clear, in the early 1980s it was established that there was a risk that AIDS could be spread by blood transfusions. In this case, plaintiff may be able to show at trial that, at the time of the collection of the blood transfused to plaintiff’s decedent, it was foreseeable that AABB’s then-current standards for the collection and screening of blood products could result in injury to blood recipients if those standards did not take the risk of AIDS transmission into account and provide for the available safeguards. Such a factual determination must, of course, be made in the context of the state of medical knowledge at the time (Hoemke v New York Blood Ctr., 912 F2d 550, 552, supra; see also, Gilmore v Memorial Sloan Kettering Cancer Ctr., supra, 159 Misc 2d, at 961).
Accordingly, defendant AABB’s motion to dismiss, based on its assertion that it has no duty to the recipients of blood collected and screened according to its standards, is denied.
B. Third and Fourth Causes of Action: Failure to Advise and Failure to Warn -
Plaintiff alleges in her third cause of action that defendants failed to advise decedent and his family that he could donate his own blood or obtain blood from a family member to be used during surgery. In her fourth cause of action, plaintiff alleges that defendants failed to warn decedent of the risk of transmission of viruses, including HIV, despite the fact that defendants knew or should have known that HIV could be transmitted in blood.
Defendant AABB moves to dismiss these causes of action, asserting that no relationship existed between decedent and AABB that would give rise to a duty to advise decedent of his medical options or to warn him of the risks involved with blood transfusions.
Although liability in negligence may rest on nondisclosure by which plaintiff or a third party is misled, resulting in injury to plaintiff (Eiseman v State of New York, 70 NY2d 175, 187, supra), the relationship of the parties must be such that the one has the right to rely upon the other for information (supra). A duty to warn is generally imposed because of a special relationship between the parties, frequently involving an existing or potential economic benefit to the defendant (Beasock v Dio *726 guardi Enters., 130 Misc 2d 25, 31-32, supra, citing Schumacher v Richards Shear Co., 59 NY2d 239, 246-247).
 The court finds, as a matter of law, that the relationship between plaintiffs decedent and defendant AABB did not give rise to a right on the part of decedent or his family to rely on AABB for advice regarding his medical options. This is clearly a matter to be examined within the context of a physician-patient relationship. Nor did the relationship between decedent and defendant AABB give rise to a duty on AABB’s part to warn decedent of the risks involved in blood transfusions. Thus, defendant AABB’s motion to dismiss the third and fourth causes of action as to it is granted.
Accordingly, it is ordered that defendant AABB’s motion to dismiss the first and second causes of action is denied; and it is further ordered that defendant AABB’s motion to dismiss the third and fourth causes of action is granted as to AABB and the third and fourth causes of action are severed and dismissed as to AABB; and it is further ordered that the remainder of the action shall continue; and it is further ordered that defendant AABB is directed to serve an answer to the complaint within 10 days after service of a copy of this order.

 The court has not treated this motion as one for summary judgment under CPLR 3211 (c).