Christopher J. NEWMAN, et al.

v.

MOTOROLA, INC., et al.

Civil No. CCB–00–2609.

United States District Court, D. Maryland.

Dec. 21, 2000.

Gary J. Ignatowski, John A. Pica, Jr., Law Offices of Peter G. Angelos, Baltimore, MD, for Christopher J. Newman.

Joanne L. Suder, Suder & Suder, Baltimore, MD, Gary J. Ignatowski John A. Pica, Jr.,Law Offices of Peter G. Angelos, Baltimore, MD, for Mary Frances Newman.

Michael E. Yaggy, Anthony Michael Conti, Piper Marbury Rudnick & Wolfe LLP, Baltimore, MD, Kenneth L. Thompson, Piper & Marbury Baltimore, MD, Terrence J. Dee, Marchell M. Willian, Kirkland and Ellis, Chicago, IL, for Motorola, Inc.

Paul F. Strain, Christina L. Gaarder, Venable, Baetjer & Howard, Baltimore, MD, M. King Hill, III, Venable Baetjer and Howard, LLP, Towson, MD, Laura Owens, Alston and Bird, Atlanta, GA, Scott Elder, Jane Fugate Thorpe, Alston and Bird, LLP, Atlanta, GA, for Gallpverizon Maryland Inc., Verizon Maryland Inc., Bell Atlantic Corp., Bell Atlantic Mobile, Inc.

Michael E. Cross, Southwestern Bell Mobile Systems, Inc., Greenbelt, MD, Thomas C. Watson, Curtis Renner, Watson & Rennerr, Washington, DC, for Southwestern Bell Mobile Systems, Inc., Washington/Baltimore Cellular Limited PA, SBC Communications, Inc.

Robert B. Green, Irwin Green & Dexter, LLP, Towson, MD, Michael G. Comeau, Renee L. Dorsey, The Law Office of Michael G. Comeau, Baltimore, MD, David B. Irwin, Irwin Green Dexter, LLP, Towson, MD, for Cellular Telecommunication Industry Association.

Daniel R. Lanier, Miles & Stockbridge, Baltimore, MD, Paul Freehling, Chicago, IL, for Telecommunication Industry Association.

## *MEMORANDUM*

BLAKE, District Judge.

Claiming that his use of Motorola wireless hand-held telephones between 1992 and 1998 caused a cancerous brain tumor, plaintiff Dr. Christopher Newman, joined by his wife, filed a multi-count complaint against numerous defendants in Baltimore City Circuit Court. The defendants timely removed the case to this court on August 28, 2000, alleging diversity jurisdiction under 28 U.S.C. § 1332. On September 27, 2000, the Newmans filed a motion for remand, relying on the absence of complete diversity; the defendants responded that the only Maryland defendant had been fraudulently joined.

Since September the defendants have filed several other motions, and the plaintiffs sought leave to file a second amended complaint, which was granted. Oral argument on the motions was heard December 12, 2000. My rulings follow.

*I. Motion for Remand*

As the Fourth Circuit has explained, a removing defendant seeking to show fraudulent joinder "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.' " *Hartley v. CSX Transportation,*

*Inc.,* 187 F.3d 422, 424 (4th Cir.1999) (quoting *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993)). *See also Richardson v. Phillip Morris Inc.,* 950 F.Supp. 700, 702 (D.Md.1997). As there is no claim of fraud in this case, the defendants bear the "heavy burden" of showing that the Newmans cannot establish a claim against the non-diverse defendant Verizon Maryland "even after resolving all issues of fact and law in the plaintiff's favor." *Mayes v. Rapoport,* 198 F.3d 457, 464 (4th Cir.1999) (quoting *Marshall,* 6 F.3d at 232–33). Accordingly, it is necessary to analyze the claims against Verizon Maryland. In doing so, the court is "not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Id.* (quoting *AIDS Counseling and Testing Centers v. Group W. Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir.1990)).

The second amended complaint, which appears to name all defendants in all counts, states nine substantive causes of action in addition to claims for loss of consortium and punitive damages. The plaintiffs state two claims based on strict products liability (Counts I and II), negligence in the manufacture of cellular phones, advertising, and warnings (Count III), breach of express and implied warranty (Counts IV and V), civil tort conspiracy (Count VI), battery (Count VII), violation of the Maryland Consumer Protection Act (Count VIII), and fraud (Count IX). The Newmans named nine defendants: seven corporations that they claim sold or manufactured cellular phones or provided equipment or transmission services in the Baltimore area and two trade organizations. Of those defendants, only Verizon Maryland is a Maryland resident.

Verizon Maryland is "a traditional land line telephone company operating in Maryland," (Compl.¶ 27), and is a wholly-owned subsidiary of Defendant Bell Atlantic Corporation ("BAC"). (Bell Atlantic Mobile ("BAM") Opp. at 3; Ex. 2, Grafton Aff. ¶ 5.) The connection between the use of cellular phones and land lines is twofold. First, cellular signals are received and transmitted via transmitting towers that are connected to a Mobile Telephone Switching Office ("MTSO") by land lines. The MTSO's are owned by the cellular companies; the land lines are leased by the cellular companies from Verizon Maryland, which owns the lines. Thus, for some portion of their journey, the cellular signals are conducted through Verizon Maryland's land lines. Second, the land lines connect the cellular company's MTSO to Verizon Maryland's "switching office" as part of the necessary transmission system. (Mot. for Rem. ¶ 7–9; Ex. 1, Davidovici Aff. ¶ 4–8.)

Preliminarily, counsel for the Newmans conceded at oral argument that the fraud and conspiracy claims did not meet the specificity requirements of Fed.R.Civ.P. 9(b). *See, e.g., Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999) (explaining that the circumstances that must be pled with specificity are "the time, place, and contents of the false representations, as well as the person making the misrepresentation and what he obtained thereby") (citation omitted); *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 250 (D.Md.2000) (stating that the particularity requirements found in Rule 9(b) are equally applicable to claims for conspiracy to commit fraud as they are to basic fraud claims).[1] Accordingly, these counts do not provide a basis for

---

1. Defendant Motorola, Inc. sought dismissal of the fraud and conspiracy claims in its Motion for Judgment on the Pleadings. As part of her concession that those counts did not satisfy the Rule 9(b) specificity requirements, counsel for the Newmans requested permission to amend the counts within thirty days. The court accedes to this request and will

dismiss the fraud and conspiracy counts without prejudice as to all defendants. It further grants the Newmans permission to file a motion for leave to amend the fraud and conspiracy counts in an effort to satisfy Rule 9(b). That motion must be received by the court no later than January 16, 2001.

liability on the part of Verizon Maryland. Further, Verizon Maryland does not manufacture or sell cellular phones, provide cellular service, or own or control the transmission towers or the MTSO's that send cellular signals. (BAM Opp., Ex. 1, Dillon Aff. ¶ 4; Ex. 4, D'Amico Aff ¶ 6.) The mechanism of injury alleged by the plaintiffs is that radio frequency radiation emitted from transmission towers and received by the antenna attached to his cellular phone penetrated Dr. Newman's tissue and caused his cancer. (Compl.¶ 21–24.) The sole basis for independent or direct liability against Verizon Maryland alleged in the plaintiffs' papers and at oral argument is, essentially, that the cellular signals could not have been transmitted without using Verizon Maryland's land lines. (See Compl. ¶¶ 27–30, Mot. for Rem. at 9.) This fact is simply insufficient to establish liability.

Verizon Maryland, a communications common carrier regulated by the F.C.C., is required by law to make its land lines available for leasing and to interconnect with wireless and other carriers either pursuant to tariffs or under arm's length negotiated contracts. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998); 47 U.S.C. §§ 251(b)(5) and 252(a)(1); BAM Opp. at 10; Ex. 1, Dillon Aff. ¶ 5; Ex. 4, D'Amico Aff ¶ 8–9. Taken to its extreme, the plaintiffs' argument could extend liability to land line companies all over the country and world and make Verizon Maryland potentially liable for torts committed by other companies, such as alarm companies and long distance carriers, who lease its land lines. For those reasons, there is no possibility that Verizon Maryland could be directly liable for the injuries suffered by the Newmans.

In addition, plaintiffs argue that, even though Verizon Maryland and Verizon Wireless are separate legal entities, the link between cellular service and the land lines makes them "essential to each others operation and ... totally integrated." (Mot. for Rem. ¶ 10; Ex. 1, Davidovici Aff. ¶ 9.) This contention is not a sufficient basis upon which to pierce the corporate veil. The plaintiffs agreed that, since 1984, the law has required the companies to be separate. Further, there is no evidence that Verizon Maryland is dominated or controlled by another company.[2] There is, therefore, no basis upon which to find Verizon Maryland vicariously liable for torts that might have been committed by its parent company BAC or by that company's cellular subsidiaries.

Thus, on the present record, there is no "glimmer of hope for the plaintiff[s]," *Hartley,* 187 F.3d at 425–26, to succeed on any of the claims asserted against Verizon Maryland. Accordingly, the Newmans' motion for remand will be denied.

## II. Motions to Dismiss for Lack of Personal Jurisdiction

Two defendants, SBC Communications, Inc. ("SBC") and Bell Atlantic Corporation ("BAC"), have moved to be dismissed from this case for lack of personal jurisdiction. Because the companies have moved for dismissal on similar grounds, the motions have been considered together.[3] BAC is a holding company, incorporated in Delaware with its principal place of business in New York. Bell Atlantic Maryland and Verizon Maryland are subsidiaries of BAC. Likewise, SBC is a holding company incorporated in Delaware, with its principal place of business in Texas. Southwestern Bell Mobile Systems, Inc. and Washington/Baltimore Cellular Limited Partnerships are subsidiaries of SBC that operate cellular systems in Maryland.

---

**2.** *Cf.* lack of personal jurisdiction analysis, *infra,* Section II.

**3.** In its original motion, BAC argued, in addition to lack of personal jurisdiction, that it was served improperly. Similarly, the Newmans argued in their response that the motion for judgment on the pleadings was premature because not all defendants had answered the second amended complaint. These contentions are now moot.

To show that the court may assert personal jurisdiction, plaintiffs must prove, by a preponderance of the evidence, that jurisdiction is proper under both the Due Process Clause of the Fourteenth Amendment, and the relevant Maryland statute. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993).[4] Because the Maryland Court of Appeals has interpreted Maryland's long-arm statute as extending to the limits allowed by the constitution, the two analyses are collapsed. *Id.* at 61 n. 3. Thus, according to Maryland's long-arm statute, the court may "assert personal jurisdiction over (1) persons who directly conduct activities in Maryland; and (2) persons who conduct activities in Maryland through an agent." *Id.* at 61. *See also* Md.Code Ann., Cts. & Jud. Proc. § 6–103(b) (text of the Maryland long-arm statute).

In this case, there is no basis for asserting jurisdiction over either SBC or BAC based on their direct contact with Maryland. Indeed, neither SBC nor BAC has employees or offices in Maryland,

owns property in Maryland,[5] directly conducts business in Maryland, sells goods or provides services in Maryland,[6] or is registered or licensed in Maryland. (SBC Mot. to Dis. at 3–5, 7; Golden Decl. ¶ 6–17) (BAC Mot. to Dis. at 5; Ex. 1, Grafton Aff. ¶ 3–4.) Further, the plaintiffs have not produced any evidence to show that the holding companies acted directly in this forum.[7] SBC and BAC, therefore, cannot be subjected to jurisdiction in Maryland based on any direct conduct. Rather, if proper, jurisdiction over those companies must be based on the actions of their subsidiaries.

To assert jurisdiction over a parent company based on the conduct of a subsidiary, the court must find circumstances warranting it to pierce the corporate veil. Maryland "has adopted the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes." *Mylan*, 2 F.3d at 61. Thus, in Maryland, the determination of agency and

4. This situation is not one in which the "district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, [and] the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan*, 2 F.3d at 60 (citation omitted). Plaintiffs were permitted to submit exhibits prior to the December 12 hearing and were heard on the jurisdictional issues at that hearing. Thus, they have the burden to prove personal jurisdiction by a preponderance of the evidence. *Id.*

5. In their opposition to BAC's motion, the plaintiffs claim that "it is reasonable to presume that Defendant Bell Atlantic owns property in Maryland, contrary to the Affidavit it submitted." (Pl's Opp. to BAC at 5.) BAC disputes this contention, however, and no evidence has been provided that makes the court doubt the validity of the affidavit asserting that BAC owns no property in Maryland. (BAC Reply at 3.)

6. At oral argument, plaintiffs' counsel introduced a printed copy of portions of Verizon, Inc.'s (formerly BAC) website. (Pl.s' Ex. 1.) Counsel argued that the website proves that Verizon sells products in Maryland. The court considers this evidence summarily because it was introduced at this late stage and,

as a result, counsel for BAC was not given time to construct a comprehensive response. Even if the court were inclined to give weight to this exhibit, it could not conclude that the website allows consumers to purchase products directly from Verizon. Indeed, there is no indication on the printed pages that the products are supplied by the parent company rather than one of its subsidiaries. Further, there is nothing in the website to refute BAC's assertion that, as a holding company, it does not manufacture or sell products or services at all.

7. In their memoranda, the plaintiffs seem to assert that both SBC and BAC acted directly in Maryland. (Pl.s' Opp. to BAC Mot. at 4–9; Pl.s' Opp. to SBC Mot. at 8.) In doing so, however, they cite only activities undertaken by the subsidiaries. They apparently argue that, because the holding companies and subsidiaries acted as one company, the holding company effectively acted in Maryland. (Pl.s' Opp. to BAC Mot. at 8.) Those arguments, however, are more appropriately addressed under agency theory. They are not appropriate allegations of direct contact by SBC or BAC.

test for piercing the corporate veil are essentially the same. *Id.* at 63. The court may only attribute the subsidiary's actions to the parent "if the parent exerts considerable control over the activities of the subsidiary." *Mylan,* 2 F.3d at 61. The central inquiry in this regard is "whether significant decisions of the subsidiary must be approved by the parent," but the court also examines factors such as whether the parent and subsidiary keep separate books and records, use separate accounting procedures, and hold separate directors' meetings. *Id.* The court also looks to see if there is an independent reason for the existence of the company; that is, it must not be fraudulently incorporated or undercapitalized. *See id.; cf. In re American Honda Motor Co., Inc.,* 941 F.Supp. 528, 552 (D.Md.1996).

■ The plaintiffs have not made a sufficient showing in this regard for the court to assert jurisdiction over either SBC or BAC. With respect to BAC, counsel for the Newmans, both in the pleadings and at oral argument, rely mainly on an SEC filing that indicates that BAC and its subsidiaries submit a "consolidated financial statement," and consolidated tax returns. (Pl.s' Opp. to BAC Mot. at 5, 10; Ex. 2.) Further, BAC has the power to appoint a majority of the board of directors for Verizon Wireless, and the companies may share directors or other officers. (*Id.* at 10–11.) Counsel also quoted the SEC Registration Statement for Verizon Wireless which states that "Verizon Communications will control our management and affairs, including decisions about acquisitions and dispositions, changes to our capital structure" and other decisions. (*Id.* at 11; Ex. 9.) These allegations are insufficient to warrant piercing the corporate veil when Verizon Wireless exists as a separate corporate entity, maintains its own financial records, has a separate purpose, and when there has been no allegation that it

exists solely as a sham corporation. Indeed, "[s]tock ownership and sharing of directors ... are insufficient grounds in themselves to justify disregarding the corporate form." *Dewhurst,* 83 F.Supp.2d at 588. *See also Honda,* 941 F.Supp. at 551–52 ("consolidated financial statements and ... interlocking directorates [are] insufficient to justify piercing the corporate veil.") Further, the fact that BAC will control certain decisions and even must approve changes does not mean the two companies operate as one. *See Dewhurst,* 83 F.Supp.2d at 589 ("[T]he fact that a parent requires its approval for certain extraordinary loans or ventures does not mean that the parent is controlling the subsidiary.").

The plaintiffs offer even less support for jurisdiction over SBC. They have produced copies of the company website which indicates only that the subsidiaries and parent company are linked. (Pl.s' Opp. to SBC Mot., Ex. C–F.) In addition, the plaintiffs have alleged that SBC, through another subsidiary, conducts research relating to wireless phones and distributes that research to the cellular companies. (*See id.,* Ex. B.) Finally, the plaintiffs point to a joint tax filing and SEC statement. For the reasons provided above, these allegations are insufficient to warrant piercing the corporate veil.

Thus, the motions to dismiss SBC and BAC for lack of personal jurisdiction will be granted.

### III. Cellular Telecommunications Industry Association's Motion to Dismiss the First Amended Complaint

Defendant Cellular Telecommunications Industry Association ("CTIA") is a non-profit trade organization that does not sell or manufacture cellular phones or provide cellular service.[8] Accordingly, it has moved to dismiss all counts against it ex-

---

**8.** The other trade association named in the lawsuit, the Telecommunications Industry Association ("TIA"), has not officially adopted this motion. Because the arguments made in CTIA's motion apply equally to it, however, TIA is joined sua sponte. Thus, the rulings in this section apply to the counts alleged against both CTIA and TIA.

cept those alleging fraud and conspiracy.[9] Initially, CTIA contends, and the plaintiffs did not disagree either in their opposition or at oral argument, that it cannot be subject to the products liability or battery claims because it did not manufacture or sell a product. The court agrees with this argument and will dismiss with prejudice the products liability claims contained in Counts I, II, IV, and V as well as the claim for battery contained in Count VII, as they relate to CTIA and TIA.

■ Second, CTIA argues that it cannot be held liable under the Maryland Consumer Protection Act, Md.Code Ann. Com. Law §§ 13–101, *et seq.*, because it is not a merchant. The statute defines a "merchant" as "a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty or consumer credit." *Id.* § 13–101. CTIA does not appear to fit this definition, and the plaintiffs have not cited to a case in which a trade association has been held liable under the Act. Instead, they direct the court to language instructing that the Act "shall be construed and applied liberally to promote its purpose," *id.* § 13–105, and cite *State v. Cottman Transmissions Sys., Inc.*, 86 Md.App. 714, 587 A.2d 1190 (1991), which stands for the proposition that a franchisor can be held liable under the statute as a merchant. The court is not persuaded by these arguments and declines to extend Maryland law in the manner sought by plaintiffs. The claim for violation of the Maryland Consumer Protection Act contained in Count VIII of the second amended complaint, therefore, will be dismissed with prejudice as to CTIA and TIA.

■ Finally, CTIA claims that it cannot be held liable on a theory of negligence because it did not sell or manufacture cellular phones or provide cellular service. In response, the plaintiffs rely on several cases in which trade associations have been found negligent for failing to exercise due care in standards they developed. *See Weigand v. University Hospital of New York University Medical Center*, 172 Misc.2d 716, 659 N.Y.S.2d 395 (N.Y.Sup. Ct.1997) (finding negligent a trade association that set standards for the collection of blood for blood banks); *Snyder v. American Ass'n of Blood Banks*, 144 N.J. 269, 676 A.2d 1036 (1996) (same); *King v. National Spa and Pool Institute, Inc.*, 570 So.2d 612 (Ala.1990) (reversing a grant of summary judgment and holding that a trade association could be held liable if its standards were relied on by a manufacturer); *Arnstein v. Manufacturing Chemists Ass'n, Inc.*, 414 F.Supp. 12, 14 (E.D.Pa. 1976) (finding it inappropriate to dismiss a negligence claim against a trade association for failure to state claim upon which relief could be granted). The plaintiffs assert that CTIA sponsors and conducts research related to the safety of cellular phones, publishes handbooks and manuals, "establishes standards for the industry regarding labeling of cell phones and has a certification program." (Pls.' Opp. at 8.) [10] They contend that CTIA did not adhere to the standard of care it owed the public when conducting that research and setting those standards.

In response, CTIA argues first that the plaintiffs did not properly plead this type of negligence action. That argument is correct; there is no mention in the second amended complaint of a negligence claim against either trade association based on safety or labeling standards. CTIA also

---

**9.** CTIA has, however, adopted the motion filed by Motorola advocating dismissal of those claims. As stated earlier, those claims will be dismissed without prejudice.

**10.** The plaintiffs also claim that "CTIA participated in testing, labeling, packaging, marketing, and/or advertising" cellular phones, and

assert that, therefore, CTIA had a duty to warn Dr. Newman. (Pls.' Opp. at 5.) Further, at oral argument counsel stated that CTIA created a safety brochure that is packaged with cellular telephones when they are sold. They argued that CTIA was negligent in the creation of this document.

distinguishes *Weigand* and *Snyder* based on the importance of the standards set by those trade associations and the evidence of direct reliance. Indeed, in those cases, the court relied specifically on the fact that both the "state and federal government, as well as the blood-banking industry, generally accept [the] standards as authoritative." *Snyder,* 676 A.2d at 1040. *See also Weigand,* 659 N.Y.S.2d at 399–400. By contrast, CTIA does not issue safety standards. (CTIA Reply, Ex. A, Altshul Aff. ¶ 4.) Indeed, it is the Federal Communications Commission that has the authority to regulate the radio frequency ("RF") emissions that Dr. Newman claims caused his injury. CTIA does maintain a certification program, whereby the association will provide its approval for products that meet certain labeling standards. (Pl.s' Opp., Ex. 2.) It is unclear, however, when that program was started or what its status was during the time in which Dr. Newman claims he was injured. Counsel for CTIA proffered that, in any event, the certification program does not relate to RF emissions.

Thus, the court concludes that the plaintiffs have not, at this time, successfully stated a claim against CTIA for negligence. Dismissal with prejudice, however, would be premature. The claim for negligence against CTIA and TIA found in Count III of the second amended complaint will be dismissed without prejudice, like the fraud and conspiracy claims, and the plaintiffs will be granted permission to file a motion for leave to amend that count by January 16, 2001. The court will retain jurisdiction over both CTIA and TIA.

*IV. Discovery*

The court has both the discretion and the obligation to structure discovery in the most appropriate way for a particular case. In this instance, causation is an essential element of all claims brought by the Newmans. Given the novel and yet unproven nature of the scientific theory underlying those claims, the defendants reasonably propose to focus first on both general and specific causation—the capacity of RF emissions to cause cancer and the likelihood that use of the Motorola wireless phone caused Dr. Newman's cancer.

Some of the discovery may apply to more than one claim. The plaintiffs, for example, should be able to obtain scientific studies and reports on the bioeffects of RF energy that are in the possession of the defendants. Hypothetically, these documents could relate to any fraud claims that may be permitted, if they tended to show misrepresentations on the part of any defendant. But the focus, at this stage, should be on causation, beginning with document production requests and limited interrogatories. The remaining possibility of remand, based on any amendments to the complaint that may be permitted or on further development of the record, is not a reason to delay discovery that would be equally relevant if the case were to proceed in state court.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. Plaintiffs' Motion for Remand is Denied;

2. All claims against Defendants SBC Communications, Inc. and Bell Atlantic Corporation are **dismissed without prejudice** due to lack of personal jurisdiction;

3. Counts VI and IX of the second amended complaint, which allege civil tort conspiracy and fraud, are **dismissed without prejudice** as to all defendants;

4. Counts I, II, IV, V, VII, and VIII of the second amended complaint, which state claims for products liability, breach of warranty, battery, and violation of the Maryland Consumer Protection Act, are **dismissed with prejudice** as to Defendants Cellular Telecommunications Industry Association and Telecommunications Industry Association; Count III, alleging negli-

gence, is **dismissed without prejudice** as to those defendants;

5. The Plaintiffs are granted permission to file a motion for leave to amend their complaint in order to supplement the fraud and conspiracy counts as to all defendants (other than BAC and SBC) and to amend the negligence claim as it relates to Defendants CTIA and TIA; that motion must be filed no later than January 16, 2001;

6. Written discovery on the issue of causation will begin as of January 2, 2001, with a status report due February 2, 2001; and

7. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.